## TEELE SOAP MFG. CO. v. PINE TREE PRODUCTS CO., Inc.

District Court, D. New Hampshire.

Nov. 3, 1934.

Robert Upton, of Concord, N. H., for Teele Soap Co.

Demond, Woodworth, Sulloway & Rogers, of Concord, N. H., for Pine Tree Products Co.

MORRIS, District Judge.

This matter arises on the petition of the Pine Tree Products Company, Inc., filed June 11, 1934, seeking to have the Teele Soap Manufacturing Company, Elliot W. Denault, and Talbot C. Chase adjudged in contempt for violation of an injunctive order of this court entered April 2, 1934.

In order for a clear understanding of the nature of the proceedings, it seems necessary to review briefly the case leading up to the injunction.

On August 7, 1933, the Teele Soap Manufacturing Company, a corporation organized under the laws of the commonwealth of Massachusetts, and having its principal place of business at Cambridge in said commonwealth,

filed a bill in equity against the Pine Tree Products Company, Inc., a corporation organized under the laws of the state of New Hampshire, and having its principal place of business at Newport in said state seeking to have determined and established the validity of a certain contract between the parties dated June 23, 1932, and a supplemental contract dated August 1, 1932, by the terms of which the Teele Soap Manufacturing Company agreed to manufacture for the Pine Tree Products Company, Inc., a brand of soap known as "Billy B. Van's Pine Tree Soap."

On September 7, 1933, the Pine Tree Products Company, Inc., filed an answer setting forth that the contract was induced by fraud and that the Teele Soap Manufacturing Company had disregarded and violated its terms, and for further relief sought the cancellation of the contracts and an accounting between parties and for such other relief as might seem just.

Injunctive orders and interlocutory decrees were from time to time made in the case regulating the conduct of the business during the pendency of the proceedings. It does not seem necessary for the determination of the issues now involved to further than mention such interlocutory proceedings.

The case finally came on for hearing on its merits at Littleton October 12, 1933, and continued for several weeks. A final rescript was filed by the court February 21, 1934.

On April 2, 1934, a final decree in accordance with the court's rescript was filed canceling the contracts of July 23, 1932, and August 1, 1932, and an injunctive order issued "that the Teele Soap Mfg. Co. be and hereby is permanently and perpetually enjoined from manufacturing, vending or in any way dealing in Billy B. Van's Pine Tree Soap or any soap or other products as and for Billy B. Van's pine tree soap or other products of the Pine Tree Products Co., Inc., including all soap or products covered by a certain trademark number 204979, registered in the United States patent office on Oct. 27, 1925, and from manufacturing, vending or dealing in soap or products in any manner or way likely to cause the same to be mistaken for said soap and products of said Pine Tree Products Co. Inc., or likely to deceive purchasers by leading them to believe the same to be the said soap or products of said Pine Tree Products Co. Inc."

"That the Teele Soap Mfg. Co. be and hereby is permanently and perpetually enjoined from manufacturing, representing and/or holding out to the trade that any soap manufactured or sold by it is made in accordance with the secret formula of the Wrisley Company turned over by it to the Teele Soap Mfg. Co., at the request of the Pine Tree Products Co. Inc., which formula has been impounded in this court as a trade secret; and it is hereby ordered that said formula and/or any copy thereof in the hands or possession of the Teele Soap Mfg. Co., be turned over forthwith to the Pine Tree Products Co. Inc."

"That the Teele Soap Mfg. Co. be and hereby is permanently and perpetually enjoined from hindering or preventing the Pine Tree Products Co. Inc., from purchasing or manufacturing Billy B. Van's Pine Tree Soap and from doing any act or acts amounting to unfair competition, tending to deceive the public, for the purpose of discouraging or deterring purchasers or persons likely to become purchasers from purchasing said Billy B. Van's Pine Tree Soap or products from the Pine Tree Products Co., Inc., or from other person or persons who may be licensed to manufacture, vend or supply the same under the trademark number 204979."

The decree further provided for the surrender and delivery forthwith to the Pine Tree Products Company, Inc., at Newport, N. H., all property of the latter in the custody or possession of the Teele Soap Company. It also provided that the provisions of the temporary injunction then in force requiring the Teele Soap Manufacturing Company, to turn over to the Pine Tree Products Company, Inc., 30 per cent. of the money received from all sales outside of New England until such outstanding accounts were fully paid should be continued in full force and effect, and that the Teele Soap Manufacturing Company turn over forthwith to the Pine Tree Products Company, Inc., a list of all unfilled orders and all orders which might thereafter be received.

The decree of April 2, 1934, did not include the matter of accounting between the parties and/or the determination of damages.

On April 19, 1934, a final order was entered dissolving preliminary injunctions and providing for a judgment against the Pine Tree Products Company, Inc., in favor of the Teele Soap Manufacturing Company in the matter of the accounting in the sum of $13,900.

Nothing further was heard from the case until June 11, 1934, when the Pine Tree Prod-

548

ucts Company, Inc., filed a petition to have the Teele Soap Manufacturing Company adjudged in contempt for violation of the injunction of April 2, 1934.

The allegations in the petition complained: (1) That the Teele Soap Manufacturing Company failed to return to the Pine Tree Products Company, Inc., certain property of the latter, namely, certain appurtenances to certain dies as required by the order; (2) that it failed to turn over to the Pine Tree Products Company, Inc., 30 per cent. of the money received of all sales outside of New England; (3) that it failed to turn over copies of the secret formulas as required by said decree; (4) that it manufactured and/or vended certain liquid Pine Tree soap in violation of the decree; (5) that it manufactured, vended, and dealt in soap of a green color and with a pine tree stamped on it which was likely to deceive purchasers by leading them to believe the same to be soap or products of the Pine Tree Products Company, Inc.; (6) that it sent out to the trade green soap stamped with a pine tree on it, with letters containing misstatements and designed to deceive the public for the purpose of discouraging or deterring persons likely to become purchasers from purchasing Pine Tree soap from the petitioner, and circulating with said letters clippings of an article in the Boston Post furnished from information given by said Denault tending to mislead the public in violation of the decree.

This matter came on for hearing on its merits July 6, 1934, and, after hearing the parties and their counsel, I find the following facts:

I will deal with the several claims in their order:

Claim 1: From the evidence it appears that the bulk of the property in possession of the Teele Soap Company was surrendered to the Pine Tree Products Company and delivered by truck to Newport, N. H., but a dispute arose between the parties as to whether all of the property was delivered. It related particularly to certain dies and appurtenances. After considerable correspondence between counsel, the dies were received, but the appurtenances consisting of die boxes were not received, although counsel for the Teele Soap Company agreed that they would be sent. The alleged reason for not delivering the die boxes was that they were manufactured and paid for by the Teele Soap Company when it was equipping its plant for the manufacture of this particular kind of soap.

This position is untenable, for it appeared in evidence that the cost of all new equipment necessary for the manufacture of pine tree soap was charged to the Pine Tree Products Company, Inc. It is the position of the petitioner that the property purchased with money which was charged to the Pine Tree Products Company and resulted in the accounting to a judgment of $13,900 became the property of the Pine Tree Products Company, Inc., within the meaning of the court's decree. I so hold. In justice to counsel for the Teele Soap Company, I ought to say that he promised that the dies and the appurtenances would be surrendered. Apparently his clients were not willing to follow his advice, and surrendered the dies or plungers, but did not surrender, and never have surrendered, the die boxes or appurtenances. I can see only one reason for its retaining the die boxes, and that is, that it might make cakes of soap similar in size and shape to the soap sold by the Pine Tree Products Company, Inc.

I find that the allegations in complaint No. 1 are sustained.

Claim 2 relates to the 30 per cent. of the money received from all sales outside of New England which was to be turned over weekly.

While from the evidence it appears that the Teele Soap Company was dilatory in sending the 30 per cent., it does appear that, after the petition for contempt was entered and before the hearing, all payments to that date had been made. It also appears that, while Mr. Chase continued as treasurer of the Teele Soap Company, the payments were promptly made.

The only remaining complaint is that the Teele Soap Company deducted $10 from the 30 per cent. for delivery charges. The language of the court's order is "that the Teele Soap Manufacturing Company be and hereby is ordered to surrender and deliver forthwith to the Pine Tree Products Co. Inc., at Newport, N. H., all property," etc.

The charge purports to be made on account of the cost of unloading the trucks at Newport, N. H. The uncontradicted evidence is that the cost to the Teele Company for unloading was $1. When the order of the court was that the Teele Soap Company deliver the property to the complainant at Newport, N. H., it meant just what it says, and any effort on the part of the defendant in this action to charge the whole or any part of the cost of transportation or unloading is unwarranted and in violation of the court's order.

Claim 2 is established with respect to the $10 item.

Claim 3 relates to the surrender of the secret formulas. It is known to the court that the original formulas were impounded with the clerk of this court during the progress of the trial of the main case. There is some evidence tending to show that the man in charge of soap making in the factory in Cambridge had copies for his use, but he testified in this proceeding that, so far as he knew, they had no formula, but a piece of paper with the various proportions of the ingredients used and that was kept in the office. He testified that he did not know what had become of it. He thought it might have been destroyed. It not appearing definitely that any formula or copy of a formula is in the hands of the Teele Soap Company, petitioner's claim No. 3 is not established.

Claim 4 relates to the sale of liquid pine tree soap. With reference to this claim, it appears that counsel for the opposing parties entered into an agreement April 18, 1934, somewhat outside the decree of the court with reference to disposition by the Teele Soap Manufacturing Company of the products on hand, among which appears to have been a quantity of liquid soap. By the terms of the agreement, the Teele Company was allowed to hold the soap on hand for thirty days to give the petitioner an opportunity to dispose of it, for which a commission of 15 per cent. was allowed the Pine Tree Products Company. It appears that a gallon of liquid soap was sold and billed by Pine Tree Products Company, 1 Lincoln Place, Cambridge, Mass., on June 1, 1934. This item is very small and of itself does not establish in my mind a willful disregard of the court's order, but is more indicative of a careless disregard of the independent agreement entered into between counsel with reference to the disposition of the products on hand.

Claim No. 4 is not established.

Claims 5 and 6 in the petition will be considered together. Claim 5 complains that the Teele Soap Manufacturing Company manufactured, vended, and dealt in soap of green color and with a pine tree stamped on it which was likely to deceive purchasers, leading them to believe the same to be the product of the petitioner.

Complaint No. 6 alleges that the Teele Soap Manufacturing Company sent letters containing misstatements designed to deceive the public for the purpose of deterring persons likely to become purchasers from purchasing Pine Tree soap manufactured by the petitioners. A further complaint is made that with said letters clippings of an article in the Boston Post inspired by Denault, president and treasurer of the Teele Soap Manufacturing Company, were sent which tended to mislead the public and which was in violation of paragraph 4 of the court's decree.

Two samples of soap marked Exhibits 2 and 8, which had recently been obtained from Filene's store in Boston, were exhibited to the court.

Roy F. Hicks, soap maker for the Teele Soap Manufacturing Company during the entire period covered by the relations between the two companies involved, testified on behalf of the Teele Company. On cross-examination he was shown the two cakes of soap, Exhibits 2 and 8, with respect to which he testified as follows:

"Q. I show you two cakes of soap marked def Ex 2 and 8. Did you assist in making that soap? A. Yes Sir.

"Q. When was that soap made, or about when? A. I could not say right exactly when.

"Q. I don't care about the exact date. Tell us approximately. A. I would say maybe about eight or ten weeks ago, around in there, I am not positive.

"Q. What connection did you have with the making of soap? A. I had connection with making all of it, practically I was in charge of it."

Cross-examination by Mr. Sulloway:

"Q. This is a cake of soap, exhibit no. 2 is a cake of soap that you made up there to try to imitate the Pine Tree Products cake? A. As far as imitation is concerned, I know nothing about it I am under instructions to make the soap.

"Q. Does Mr. Denault give you instructions to stamp pine tree on that cake of soap? A. Yes Sir.

"Q. Did he try to tell you to get the color? A. He did not; in fact, he told me just the opposite.

"Q. You used the same dye as the formula came from Wrisley. A. Just to change it so it would not be the same."

A comparison between the exhibits and soap manufactured by the plaintiff discloses the same identical green color so far as the eyes of the court can detect. It has the same pine tree odor with a facsimile of a pine tree stamped on the cake. The pine tree is not exactly like the pine tree stamped on peti-

tioner's soap but the likeness is so close that it requires good light and close inspection to detect any difference. The opposite side of the soap is stamped with the name "Teele Soap Mfg. Co. Cambridge, Mass."

The cakes are not quite the same shape, in that the corners are rounding instead of square.

Taking into account the color, odor, and impression of a pine tree, the general appearance of the soap would be likely to deceive a prospective purchaser, even though the name of the Teele Soap Company was stamped on the cake, because it was known to the trade that the Teele Soap Manufacturing Company had for two years past been manufacturing soap for the Pine Tree Products Company, Inc.

A total of about 10,000 cakes were sold to Filene's in Boston, out of which 5,000 cakes were returned to the Teele Soap Company when it was understood the parties were in litigation.

Contemporaneous with the manufacture of soap as above described, the Teele Soap Company, through its president and treasurer, Mr. Denault, caused to be published on the financial page of the Boston Post of May 11, 1934, the following item: "Teele Soap Wins Suit. The suit in equity brought by Teele Soap Manufacturing Company against the Pine Tree Products Company of which Billy B. Van is president, was decided in favor of the Teele Soap Manufacturing Co., granting them a judgment for indebtedness amounting to $13,900, in a return from the United States District Court for the District of New Hampshire dated April 19, 1934."

This item was attached to letters sent out to the trade, a facsimile of which is attached to the petition. The letter is written on the letterheads of the Teele Soap Manufacturing Company, and reads as follows:

"Established 1930.
"Teele Soap Manufacturing Co.
"1 Lincoln Place, Cambridge, Mass.
"May 26, 1934.
"The Herzfeld Phillipson Company, Milwaukee, Wisconsin

"Attention: Purchasing Agent for Department No. 123
"Gentlemen: As you know, we have been the manufactures of Billy B. Van's Pine Tree Soap for the last three years, which arrangement has terminated as per the inclosed clipping.

"We are taking the liberty of sending you under separate cover an unwrapped sample of our specially made pine soap, and request the privilege of sending you seven cases which we can bill you at $4.00 per case.

"This price is a considerable advantage as compared with that you are paying now, and we believe the quality of our soap can not be surpassed, as it is the result of a great deal of experimental work.

"We look forward to your reply.
"Very truly yours,
"Teele Soap Manufacturing Company
"By Elliot W. Denault, President."

On the letters sent out to the trade in the upper right-hand corner thereof was pasted the clipping from the Boston Post with an arrow pointing to the same.

I find as a fact, not only that the Teele Soap Manufacturing Company manufactured and sold a cake of soap so nearly like the soap manufactured or sold by the Pine Tree Products Company as to deceive the public, and I also find that, by means of the false advertisement and the letter which accompanied it, the Teele Soap Manufacturing Company attempted to secure the trade in Pine Tree Soap and destroy the good will built up by the Pine Tree Products Company, Inc. It attempted to convey an entirely false idea of the determination of the litigation between the parties and to capitalize this for its own profit. Such acts were in violation of the Court's decree. Petitioner's claims 5 and 6 are established.

### Rulings of Law.

As above appears, the Teele Soap Manufacturing Company is a Massachusetts corporation with its principal place of business at 1 Lincoln place, Cambridge, Mass. Elliot W. Denault, president and general manager of the corporation, is a resident of Newton, Mass.; Talbot C. Chase, one time treasurer of the corporation, is a resident of Brookline, Mass.

Order to show cause was served on each, of the parties by a deputy marshal in the District of Massachusetts. On June 28, 1934, the Teele Soap Company and Denault filed a motion to quash the order to appear and show cause and to set aside the return of service and certificate because service was made outside the jurisdiction of the District of New Hampshire. These motions were overruled subject to exceptions. On July 6 and 10, 1934, hearings were held and testimony taken on the merits of the case. Evidence was offered on the part of the corporation and Talbot C. Chase. Denault appeared special-

ly by counsel but not in person, and offered no evidence in his behalf.

■■ The question of jurisdiction, this being a civil contempt proceedings, appears to be settled by the United States Supreme Court in the case of Leman, Adm'r, v. Krentler-Arnold Hinge Last Co., 284 U. S. 448, 52 S. Ct. 238, 76 L. Ed. 389, in so far as the action relates to the corporation. In the above-entitled case it was held that service of process for the purpose of bringing the respondent within the jurisdiction of the court is unnecessary in a contempt proceeding. Actual notice of that proceeding suffices, as where the respondent appears for the purpose of objecting to the jurisdiction upon the ground that he has not been brought in by process, and, upon the overruling of the objection, contests his liability. A civil contempt proceeding is part of the main case.

In the instant case no claim is made that the parties did not have actual notice of the hearing in this proceeding. Certainly the corporation cannot hide behind state lines.

■ Denault did not appear except specially, and as to him a somewhat different question arises. He was not, individually, a party to the equity proceedings. He was the treasurer, president, and general manager of the corporation at the time when the acts were committed by the corporation which I have found constitute a violation of the injunctive order. The corporation, being an inanimate entity, cannot act except through its officers and agents. I cannot divorce its acts from the willful conduct of Denault through whom alone it acted, and, while it is beyond the power of this court to issue process directing the marshal in Massachusetts to arrest Denault and bring him before this court for punishment, Mitchell v. Dexter (C. C. A.) 244 F. 926, it does not follow that, as the master mind, responsible for the contempt, he may not be so adjudged, and, if apprehended within this district, that he may not be brought before this court for punishment. Heinze v. Butte & B. Consol. Min. Co. (C. C. A.) 129 F. 274; Hamilton v. Diamond Drill & Mach.

Co. (C. C. A.) 137 F. 417; W. B. Conkey Co. v. Russell (C. C.) 111 F. 417. He has acted in willful defiance of the court's order, of which he had due notice because of his connection with the equity suit, and is adjudged in contempt.

■ It appears that Talbot C. Chase, one time treasurer of the corporation, resigned as treasurer and director on the 9th day of April, 1934. Mr. Chase had loaned the corporation $33,000. In order to reimburse himself for his loan, he took an assignment dated May 1, 1934, of the judgment awarded to the Teele Soap Company on the accounting of $13,900. I do not find that Mr. Chase in any way acted as an officer of the corporation after the date of his resignation or that he is in any way responsible for the acts of the corporation in defiance and violation of the injunctive orders. I find that he is not an officer or individually guilty of any contempt. His only interest in the corporation is that of a minority stockholder.

■ The Teele Soap Manufacturing Company claims in argument that the Pine Tree Products Company, Inc., does not come into court with clean hands and is not entitled to equitable relief. It invokes the maxim, "He who seeks equity must come with clean hands." Parenthetically, I might say there is plenty of soap in this case for use, but seriously this is a question that should have been raised, if at all, in the original equity suit. In this proceeding the only question is whether or not the parties are guilty of contempt. Orders have been made in the original action from which no appeal has been taken, and, right or wrong, they should be obeyed, unless modified.

The case against the corporation will be referred to a master for the assessment of damages in lieu of a fine. Whether such damages as may be found may in any way be set off against the judgment for $13,900, assigned to Chase, if not otherwise satisfied, is a question which it is not now necessary to determine.