## AMERICAN FOUNDRY EQUIPMENT CO. v. PITTSBURGH FORGINGS CO. et al.

### No. 3178.

District Court, W. D. Pennsylvania.

Jan. 10, 1938.

Stebbins, Blenko & Parmelee, of Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, John C. Bane, Jr., Christy & Wharton, and Brown, Critchlow & Flick, all of Pittsburgh, Pa., for defendants.

SCHOONMAKER, District Judge.

This is a patent suit involving claims 8, 9, 12, 14, 15, 16, and 17 of Peik Patent No. 1,953,566, dated April 3, 1934, for a blasting machine of a centrifugal type, intended for the projecting of abradant particles such as sand, shot or other grits. The invention is said to rest in the directional properties of the machine, in that it is possible to project the blast over a desired limited zone. There is no limitation as to the type of work to be done by the projected blast.

Peik, in his patent application, gives the following general description of his invention (Patent 1,953,566, page 1, lines 1 to 62 inc.):

912

"This invention relates to blasting machines of the centrifugal type and is adapted for the projecting of abradant particles such as sand, shot or other grits. My machine is characterized by improved results and particularly by its ability to deliver the abradant around a selected portion only of the periphery. Generally speaking, centrifugal blasting machines discharge with greater or less uniformity all the way around the periphery and since the normal way of handling material to be treated requires that it lie to one side only of the centrifugal wheel, it becomes necessary to shroud or shield the remaining portion of such heads. This procedure is bad principally because the shroud is itself rapidly worn away and the abradant is rapidly deteriorated. It is no exaggeration to state that in using centrifugal heads of ordinary type from half to three-quarters of the discharged abradant does not reach the article to be blasted. My improved machine has directional properties; that is to say, it discharges abradant around a portion only of the periphery and the zone of discharge may be nicely controlled so that it is possible to protect the blast over a desired limited zone.

"I provide a rotatable head having a central opening with a passage or passages extending from such opening to the periphery of the wheel, which passages are preferably spirals extending outwardly or rearwardly with respect to the direction of rotation. Within the central opening I place a normally stationary container, which container has a passage of peripheral length through which blast particles may be fed from the container to the passage or passages in the head. I employ an impeller within the container and feed blast particles to such impeller, whereby uniform feeding of the blast particles to the rotatable head is obtained. Since the feeding of blast particles from the container to the rotatable head takes place only over a limited range, the discharge is correspondingly limited. I make provision for adjusting the orientation of the container so that the orientation of the discharge zone may be likewise varied, and I also provide for adjusting the peripheral length of the opening through which the blast particles

are supplied so that the annular length of the discharge zone may be likewise controlled.

"I have found that in order to get the best results it is highly desirable to use passages of generally spiral form in the head, which passages serve to feed the particles at rapidly increasing velocity toward the periphery of the wheel. I there provide discharge or impact surfaces against which the particles strike and from which they rebound to be discharged from the head. This arrangement gives a nicety of control which is ordinarily very difficult if not impossible to obtain and insures highly efficient blasting."

The claims of the patent in suit relate to the directional control features of the invention.

Claim 16 is cited as a typical claim. It is as follows:

"16. A blasting machine comprising a rotatable head having a central opening, a passage extending from such central opening to the periphery of the head, a normally stationary container within the central opening, said container having a passage of limited peripheral length through which blast particles may be fed from the container to the passage in the head, means for supplying blast particles to the container, and an impeller in the container for feeding such particles through the passage in the container, the impeller having radial blades."

If this claim is infringed, it would follow, as a matter of course, that the other claims in suit are likewise infringed.

The accused structure is a blasting machine shown in drawings furnished by defendants in response to interrogatories (Plff. Exs. 9 and 10); and the plaintiff contends that so far as concerns directional control, the devices are structurally and functionally identical.

The defendants contend that the patent in suit is invalid, that they do not infringe, and that the defendants' machine was developed prior to the Peik patent.

The defense of invalidity is based on the prior art patents included in defendants' Exhibit D, and the Hollingsworth blasting machine shown to have been built

and operated prior to Peik's machine. It is the contention of defendants that everything common to the patent in suit and the accused structure was known and available to those of ordinary skill in the art long prior to the entry of Peik into the field.

The defense of non-infringement rests upon the fact that the accused structures are a "slider" type of machine and are different structurally and in principle of operation from the "batter" type of machine of the patent in suit.

The defense of origination of the accused structures prior to the date of the conception of Peik rests on the contention by defendants that everything in common to the patent in suit and the accused structure was designed, built and tested prior to the Peik conception and development.

■ On the issue of validity, we find for the plaintiff. The idea of centrifugal blasting with a rotating wheel did not originate with the patent in suit, but no practical machine was devised until Peik came to the field. The commercially practical art in abrasive cleaning was by air blasting and the old tumbling barrel. The plaintiff was the first to put on the market in this country a centrifugal blasting wheel. This wheel embodies the invention of Hollingsworth, which is now owned by plaintiff. This machine was displayed at the Foundrymen's Convention in Chicago, June 20-23, 1933. This wheel is not cited in defendants' answer as anticipatory of the patent in suit. It is operated with a shroud around its periphery to assist in directing the abrasive. These shrouds wore out rapidly and had to be replaced. The problem of directional control of the discharge blasts was solved by Peik. He did it by devising a wheel which would receive the abrasive at the center in such manner that the abrasive was fed over the inner ends of throwing blades and discharged from the periphery of the wheel throughout a limited arc in any desired zone about the wheel. The claims in suit are all directed to that phase of the invention and define a combination of wheel, container (Control cage), and impeller acting to discharge abrasive from the periphery of the wheel at any desired sector in a limited and controlled arc.

The claims of the patent in suit are not limited to the particular type of spiral throwing blades preferred by Peik, so that the form of the throwing blades is not involved in this suit.

The utility and commercial success of plaintiff's blast-cleaning device have amply been established. We have no hesitation in finding that the claims of patent in suit are valid.

Comparing now the accused structure with typical claim 16 of the Peik patent, we have no difficulty in reading it upon the defendant device.

Defendants assert that the accused structure does not respond to the requirement of the claim for a "central opening." We construe this to be the space defined by the inner ends of the throwing vanes, which receives the container and impeller. We find precisely the same central space in defendants' structure. Defendants assert that the accused structure does not have the "passages" of the claims of this patent, but only "channels." This we regard as a distinction without a difference. Whether you call the space between the blades "passages or channels" does not make any difference in the operation of the wheel, because it is the space through which the abradant passes in both structures. Defendants assert their blades are not like those of the patent in suit. As we read the claims of the Peik patent in suit, they are not limited to the preferred type of blade suggested by Peik. As we view the case, the abradant is discharged in the same way, whatever type of blade you use to define the course and direction in which the abradant is to be discharged.

Defendants seek a distinction in the allegation that they have a slider type of blade, as distinguished from the better type of blade. We cannot follow them there. We see no difference between the two, so far as regulating the point and manner of discharge of the abradant.

■ We therefore see no escape from the conclusion that if the patent in suit is valid, it is infringed.

914

Starting with the presumption of validity that rests with every patent, we stand in a situation where the alleged invalidity must be demonstrated beyond a reasonable doubt before we can so hold. We have carefully studied the prior art cited against the Peik patent, and can find no references which directly anticipate the structure of the patent in suit. Nor can we find any disclosures in the prior art, which would require the exercise of only ordinary mechanical skill to produce from them the changes required to construct the structure of the patent. Fourteen patents were offered in evidence by defendants; and their expert, Brush, their only witness as to prior patents, selected as his best prior art references, the German patents to Weber and Grocholl, Nos. 512,269 and 519,837, for mold-filling machines; United States Patent to Parrish, No. 1,166,476, for a seed-and-fertilizer thrower. In none of these patents can we find any disclosures that would lead us to hold the patent in suit invalid. In the first place, they are in non-analogous arts. No centrifugal blast machine is disclosed by any of these patents. The Weber and Grocholl device is a machine to pack sand into wads and then to throw it into a mold in a foundry. There is no indication that the device was available for throwing abrasives. In fact there is no evidence that the Weber and Grocholl machine would work at all, even in its own field, or that it ever was used commercially. On the contrary, Hughes, a witness for plaintiff, testified he tried to operate this device as a sand slinger, but was unsuccessful in so doing.

The Weber & Grocholl device is a flexibly mounted, hand guided machine, which is supposed to pick up the sand in an inner casing and pass it through an opening in this casing against the wall of an outer casing or housing, then to push the sand around inside the outer casing until it is packed to the desired density, finally discharging it out of a discharge spout into the foundry mold.

There is no other provision for changing the direction of discharge. That could be accomplished only by moving the machine. In this device we find no identity of means,

operation or results with that of the Peik device. We therefore conclude that this mold-filling device does not anticipate the claims of the patent in suit. Nor can we see that the "double use" rule would apply to this case, for we do not have a case of the transfer of an old structure without modification from one art to another.

The next best reference of defendant is the Parrish Patent No. 1,166,476, for a hand-fertilizer and seed-thrower. In our judgment, this device is so obviously lacking in features necessary for a successful centrifugal blasting machine that it is hardly worth considering at all. It is in a non-analogous art. It seems to us it is self-evident that its reconstruction into a centrifugal blasting machine would be entirely beyond the skill of a mechanic.

The other lesser references of the defendant are so far removed from the idea of directional control in a centrifugal blasting machine that we do not deem it necessary to discuss them.

We next come to the question of priority. Priority of invention is not pleaded in the answer. Nor was any notice given of such a claim under Section 4920, R.S., 35 U.S. C.A. § 69. However, defendants do claim prior origination of the centrifugal blast-device. On that issue we must find for the plaintiff. Peik, as chief engineer of the plaintiff, because interested in centrifugal blasting machines when he went to Indianapolis to see a wheel devised by Hollingsworth. This led to the manufacture of the Hollingsworth wheel by plaintiff. Peik was not satisfied with the results accomplished and set out to work secretly at home on the problem of directional control. The result was that by March 7, 1933, he made a drawing showing a device which proved to be the solution of the problem by directional control. We fix this date, March 7, 1933, as the date of conception by Peik. He made a model which was assembled and tested at his home in April, 1933. A test of the Peik model in court showed directional control. Peik, on June 21, 1933, conferred with a patent attorney, Ray Springle, since deceased, and was advised that the invention was his own property. Accordingly Springle prepared a

patent application for this device in July, 1933. Peik executed this application on August 9, 1933, and it is now pending in the Patent Office. Peik resigned his position as engineer for plaintiff on September 27, 1933. The Wean Engineering Company of Warren, Ohio, became interested, and Peik accepted a proposition from them to promote the invention with them. He entered their employ October 1, 1933, and immediately started to make working drawings for a commercial machine, which were completed in October and November, 1933. Work progressed on this machine. During the first week of December, all the parts of the machine were ready for assembly and the machine actually started running on December 8, 1933. After minor adjustments, satisfactory commercial directional control was secured by this machine about the second week of December, 1933. This constitutes actual reduction to practice. Our view is that Peik was diligent in reducing to practice his invention from the date of its conception in early March, 1933. This is earlier than any date the defendants can claim for their device. Rosenberger and Keefer, who worked for defendants on their machine, had no conception of the invention as defined by the patent in suit until after Peik's conception. From the evidence, we are unable to find any date of conception by either Rosenberg or Keefer earlier than the drawings of November 21, 1933. Their earlier work, as we view it, shows merely they recognized the problem of directional control, but did not solve it till November 21, 1933.

We therefore must award priority of invention to the plaintiff.

Findings of fact and conclusions of law in accordance with this opinion are filed herewith.

### Findings of Fact

1. Plaintiff, The American Foundry Equipment Company, is a corporation of Delaware.

2. The defendant, Pittsburgh Forgings Company, is a corporation of Delaware, having a regular and established place of business in Coraopolis, Pennsylvania, in this District; and the defendant, Pangborn Corporation, is a corporation of Maryland, which has submitted to the jurisdiction of this court for the purpose of the present suit.

3. The patent in suit, No. 1,953,566, is owned by plaintiff.

4. Sale of the alleged infringing devices by Pangborn Corporation to Pittsburgh Forgings Company and use by the latter prior to the commencement of this suit are admitted by the defendants.

5. Defendants were given notice of infringement before the suit was instituted.

6. Prior to the invention of the patent in suit, the only blasting systems in use were the pressure-air blast, tumbling mill and hand-cleaning with steel brushes.

7. The device specifically shown in the drawings and described in the patent in suit is a commercially operative machine having directional control and was intended as a preferred embodiment. The invention is not limited thereto and may be otherwise embodied and practiced within the scope of the claims in suit.

8. The plaintiff began to market blasting machines of the centrifugal type as early as August, 1933, and was the first to introduce blasting wheels for commercial use in this country. Since the invention of the patent in suit became available to plaintiff, its commercial wheels sold under the trademark "Wheelabrator," have embodied the Peik invention of the patent in suit, and all wheels previously sold by it were then modified to include the Peik invention.

9. The invention of the patent in suit permits of great savings in equipment and operating costs ranging from 20% to approximately 70%.

10. Since the invention of the patent in suit became available to plaintiff, it and its agents have sold over 400 Wheelabrator units having a sales value of approximately $2,233,000 in a period of three years and two months.

11. The invention is rapidly displacing the air-blast cleaning method.

12. Aside from the plaintiff, the defendant Pangborn Corporation is the only manufacturer selling centrifugal blasting wheels.

13. The utility of the Wheelabrator is admitted.

14. Prior to the filing of the bill of complaint, within six years thereof and subsequent to the issuance of the patent in suit, the defendant, Pangborn Corporation, sold the alleged infringing devices to the defendant, Pittsburgh Forgings Company.

15. Prior to the filing of the bill of complaint, within six years thereof and subsequent to the issuance of the patent in suit, the alleged infringing devices were used by the defendant, Pittsburgh Forgings Company, in this District.

16. The example claim 16 in suit is infringed by the accused structure. The space defined by the inner ends of the channel-shaped vanes of the accused structure constitutes a "central opening" of the claim. The channel-shaped throwing vanes of the accused structure constitute "passages" of the claim.

17. The remaining claims in suit are infringed by the accused structure.

18. The Weber and Grocholl German patents Nos. 512,269 and 519,837 do not disclose or teach the invention of the patent in suit. The devices disclosed therein are not operative practically as sand slingers or as blasting machines. These patents and the patent in suit are in non-analogous arts. The changes and reconstruction necessary to make the device of the patent in suit or the accused structure from the disclosures of the Weber and Grocholl patents, prior to the invention of the patent in suit, would involve invention.

19. Parrish Patent No. 1,166,476 does not disclose or teach the invention of the patent in suit. The device disclosed therein is not operative practically as a seed-thrower or as a blasting machine. This patent and the patent in suit are in non-analogous arts. The changes and reconstruction necessary to make the device of the patent in suit or the accused structure from the disclosure of the Parrish patent, prior to the invention of the patent in suit, would involve invention.

20. None of the prior art patents introduced into evidence disclose or teach the invention of the patent in suit.

21. Peik conceived the invention of the subject matter of claims 8, 9, 15 and 16 of the patent in suit on or prior to March 7, 1933. He had a model embodying the invention of these claims, assembled and tested prior to May 1, 1933, and he diligently reduced to practice the subject matter of claims 8 and 9 on June 20, 1933.

22. Peik's original application, Serial No. 685,025, for "Abrasive Throwing and Impelling Apparatus" discloses a commercially operative device responding to claims 8, 9, 15 and 16 of the patent in suit. The filing of this application on August 14, 1933, constitutes a diligent and constructive reduction to practice of the subject matter of these claims.

23. Peik conceived the features defined in claims 12 and 14 of the patent in suit prior to November 1, 1933, and diligently reduced to practice the subject matter of these claims by an actual reduction to practice in December, 1933, and also by a constructive reduction to practice by filing the application for the patent in suit on January 24, 1934. As to the features of claim 17, defendants offered no proof of priority.

24. On the so-called issue of priority, defendants rely upon the work of Rosenberger and Keefer, employees of the defendant, Pangborn Corporation. Rosenberger and Keefer, severally or jointly, did not have a conception of the invention defined in any of the claims of the patent in suit in issue prior to November 21, 1933, which is the date appearing on the drawing introduced as Defendants' Exhibit AA. Rosenberger and Keefer, or either of them, did not construct a device having a control cage and impeller until after Peik had reduced to practice the invention as defined in claims 8, 9, 12, 14, 15 and 16 of the patent in suit. The earliest possible date which defendants can properly contend for as a date for reduction to practice of the invention as defined in claims 8, 9, 12, 14, 15 and 16 of the patent in suit is after December 25, 1933.

25. Peik conceived the invention prior to Rosenberger and Keefer, or either of them. Peik diligently reduced to practice.

Accordingly, Peik is the first and original inventor of the subject matter of the claims in suit.

Conclusions of Law.

1. Plaintiff is the owner of the patent in suit.

2. Claims 8, 9, 12, 14, 15, 16 and 17 of the patent in suit define invention over the prior art.

3. Claims 8, 9, 12, 14, 15, 16 and 17 are not anticipated.

4. Claims 8, 9, 12, 14, 15, 16 and 17 of the patent in suit are valid.

5. Defendants have infringed claims 8, 9, 12, 14, 15, 16 and 17 of the patent in suit.

6. Plaintiff is entitled to a decree directed to the defendants in the usual form for an injunction and accounting.