PANGBORN CORPORATION v. AMERICAN FOUNDRY EQUIPMENT CO.

Civil Action No. 193.

District Court, D. Delaware.

Nov. 17, 1944.

William S. Potter, of Southerland, Berl & Potter, all of Wilmington, Del., and William F. Hall, of Hall & Houghton, all of Washington, D. C., for plaintiff.

Hugh M. Morris, of Morris, Steele, Nichols & Arsht, all of Washington, Del., for defendant.

GOODRICH, Circuit Judge.

Findings of Fact.

1. On January 8, 1940, Pangborn Corporation, hereinafter referred to as "Pangborn," filed its complaint in this Court against The American Foundry Equipment Company, hereinafter referred to as "American".

2. In its complaint Pangborn alleged, inter alia, the ownership by it of Rosenberger and Keefer application for United States Letters Patent, Serial No. 726,188,

filed May 17, 1934, for a blasting machine; the ownership by American of application for patent of Louis D. Peik, Serial No. 685,025, filed August 14, 1933, for an invention for a centrifugal blasting machine; the institution on or about November 30, 1937, of Interference proceeding No. 74,841 involving the aforesaid applications and an application of R. E. Peterson, Serial No. 59,455.

Pangborn charged that the Peik application had become abandoned and had been improperly revived. Pangborn likewise alleged that on or about October 24, 1931, one Hollingsworth filed an application, Serial No. 570,782 for a centrifugal blasting machine; that thereafter American filed or caused to be filed to said application, a supplemental amendment containing "new matter" and new claims which "corrupt" said application; and that a second Hollingsworth application was thereafter filed; that American caused an interference between said Hollingsworth application and a patent application filed by Karl Grocholl to be declared; that Grocholl was defeated in said interference; and that patent 2,224,647 to Grocholl upon his application issued December 10, 1940.

3. In its complaint Pangborn prayed that American be enjoined from further prosecuting Interference No. 74,841 or any other interference in which Peik application Serial No. 685,025 is involved with the patent application owned by Pangborn; that American be required to cause Peik application Serial No. 685,025 to be restored to the status it occupied prior to its revival; and that American be estopped from any action to obtain a patent on the Hollingsworth application with claims addressed to the subject matter interpolated therein by amendment, and from any action upon the later filed Hollingsworth application for such interpolated subject matter upon the representation that it was lawfully in the earlier application or lawfully established as the invention of Hollingsworth in the Hollingsworth v. Grocholl interference.

Pangborn likewise moved for a preliminary injunction.

4. American filed a motion for summary judgment and a motion to dismiss. By order of this Court filed June 2, 1943 the motion for summary judgment was overruled and the motion to dismiss the allegations of the complaint involving the Peik application was overruled. The motion to dismiss as to the Hollingsworth-Grocholl matters was granted. Pangborn's motion for preliminary injunction was denied "without prejudice to plaintiff to renew the application upon a showing that such an injunction is necessary for the preservation of its rights pending the determination on the merits."

5. On or about June 10, 1943, Pangborn filed its further motion for a preliminary injunction inhibiting defendant, its agents, attorneys and each of them—

"* * * from the further prosecution of Interference 74,841, Peterson v. Rosenberger and Keefer v. Peik, or any other interference or interferences in which the Peik application serial number 685,025 is now or hereafter may be involved with an application for patent owned by the plaintiff."

6. On or about July 27, 1943, defendant filed its answer and counterclaim. In conformity with the prayers of its counterclaim defendant, on or about July 27, 1943, filed its motion for a preliminary injunction against plaintiff, Pangborn Corporation, its officers, agents, employees and attorneys, enjoining and restraining them and each of them—

"* * * from further prosecution of Interferences Nos. 74,841 and 75,177 and each thereof, or from otherwise or elsewhere in any litigation or proceeding, ascertaining [sic] or contending that Pangborn, as assignee of Rosenberger and Keefer, or either of them is entitled to priority over Peik, assignor to The American Foundry Equipment Company, with respect to any matter disclosed, described or set forth in the specification or drawings of Peik Application Serial No. 685,025 or in the specification or drawings of Patent No. 2,212,451 to Peik, assignor to defendant herein."

7. The aforesaid motions for preliminary injunctions filed on or about

June 10, 1943, and July 27, 1943, by plaintiff and defendant, respectively, came on for hearing on July 28, 1943.

8. On or about August 3, 1943, an injunctive order of this Court, upon the pending motions for preliminary injunction was made, providing:

"(1) That each of the parties, its officers, agents, employees and attorneys, and each of them, pending the determination of this cause on the merits, or until the further order of this Court, be and each hereby is enjoined and restrained from the further prosecution of Interferences Nos. 74,841 and 75,177, now pending in the United States Patent Office, or from prosecuting any other interference or interferences in which the application for patent of Peik Serial No. 685,025 may hereafter be involved with an application for patent owned by the plaintiff; * * *."

Leave was granted to Pangborn to file an amended complaint.

9. It was the intent and purpose of said injunctive order to preserve the status quo of the interference proceedings and prevent any change therein until the further order of the Court, and thereby, prevent any change in the status with respect to the subject matter of Peik application 685,025 or Rosenberger and Keefer application 726,188, insofar as the patentability of any part thereof was contingent upon the outcome of the interference.

10. On June 27, 1944, United States Letters Patent No. 2,352,588 issued to Pangborn Corporation upon an application, Serial No. 382,256, filed by William A. Rosenberger and Walter L. Keefer, assignors to Pangborn Corporation, on March 7, 1941, within fourteen months after the filing of the original complaint in this action.

11. Said application Serial No. 382,256 was transmitted to the Patent Office by letter of March 7, 1941. That letter stated:

"We file herewith an application in the name of William A. Rosenberger and Walter L. Keefer for A Directional Control Centrifugal Blasting Machine. Certain claims of this application are now in an application Serial No. 726,188 of William

A. Rosenberger and Walter L. Keefer, filed June 17, 1934.

"These transferred claims will be canceled from the latter application."

12. At the argument aforesaid upon the motions of the respective parties for a preliminary injunction, plaintiff herein failed to disclose to this Court or to defendant the existence of its aforesaid new application Serial No. 382,256, and the transfer thereto of claims 7, 8 and 9 of the Rosenberger and Keefer application Serial No. 726,188.

13. Defendant herein was without knowledge of either the filing of said application serial No. 382,256, eventuating in patent 2,352,588, or the pendency thereof, and was without such knowledge until after said patent issued on June 27, 1944.

14. On August 21, 1944, American filed its petition that Pangborn, certain of its officers, and William F. Hall, Esquire, its attorney, be adjudged by this Court to have been guilty of contempts of its authority, and that each of them be punished by this Court therefor.

15. A rule to show cause was issued and served and notice of American's petition given to Pangborn, its said officers and attorney, as prescribed by order of this Court pertaining thereto.

16. Hearing was had September 6 and 8, 1944, upon American's verified petition, Pangborn's response to the show cause order, affidavits filed by and on behalf of the respective parties, and upon the other pleadings proceedings, affidavits, documents and exhibits in the main action.

17. The issue of priority between Rosenberger and Keefer and Peik was heard by the United States District Court for the Western District of Pennsylvania in the suit of The American Foundry Equipment Company v. Pittsburgh Forgings Company et al., D.C.W.D.Pa., 1938, 67 F.Supp. 911 (hereinafter called "the Pittsburgh suit"), involving Peik patent 1,953,566, issued April 3, 1934 on an application filed January 24, 1934, to The Wean Engineering Company, Inc., as assignee of Louis D. Peik, for a blasting machine of a centrifugal type described by the Circuit Court of Appeals, Pittsburgh

Forgings Co. v. American Foundry Equipment Co., 3 Cir., 1939, 102 F.2d 964, as:

"* * * a combination of a rotor (or wheel) having segments (or blades) spaced apart to provide passage for the abrasive from the center of the wheel to the periphery; a container (or control cage) at the center of the rotor with an outlet for the abradent; and an impeller within the cage which carries the abradent to the outlet, the cage and impeller cooperating with the passages or blades to discharge the abrasive from the periphery of the wheel at any desired sector in a limited and controlled zone of discharge."

Thereafter The Wean Engineering Company, Inc. on December 21, 1935, assigned said patent to American Foundry Equipment Company.

The accused structure was a blasting machine of the centrifugal type made by Pangborn and sold by it under the name RA-ROTOBLAST, embodying a control cage, an impeller, and a rotor or head with spaced apart substantially straight blades. Said accused machine was constructed substantially as disclosed in Figures 1, 2, 3 and 4 of the drawings of the Rosenberger and Keefer application Serial No. 726,188.

The Court, having before it the proofs of conceptions and reduction to practice of Peik, including the earlier filed Peik application Serial No. 685,025, executed August 9, 1933, and filed August 14, 1933, and also the proofs of conception and reduction to practice of Rosenberger and Keefer, including its application Serial No. 726,188, filed May 17, 1934, said:

"From the evidence we are unable to find any date of conception, either by Rosenberger or Keefer, earlier than the drawings of November 21, 1933."

18. Other defenses in the Pittsburgh suit included that of invalidity because of the prior art, including the structures of Hollingsworth and of Grocholl respectively, and non-infringement in that the passages defined by the blades in the rotor or head of defendant's structure were alleged to differ in form and function from those of the Peik patent 1,953,566 sued upon.

19. The District Court (Judge Schoonmaker), in the Pittsburgh suit, held that Peik had, by his structure, solved the problem of directional control; adjudged the Peik patent there in suit valid over the prior art, including Hollingsworth and Grocholl; and adjudged Pangborn's "RA ROTOBLAST," having the substantially straight blades of Rosenberger and Keefer application 726,188, an infringement of the claims there in issue of patent 1,-953,566, saying:

"Defendants assert their blades are not like those of the patent in suit. As we read the claims of the Peik patent in suit, they are not limited to the preferred type of blade suggested by Peik."

20. The Circuit Court of Appeals for the Third Circuit affirmed the interlocutory judgment in the Pittsburgh suit. 102 F.2d 964.

21. The accounting in the Pittsburgh suit proceeded. Pangborn discontinued the manufacture and sale of its "RA ROTO-BLAST" and substituted therefor a new machine, which also was ordered to be included in the accounting.

22. On or about April 24, 1941, Pangborn filed in the District Court at Pittsburgh, with leave of the Circuit Court of Appeals, a petition for review and for a rehearing wherein it set out, alleged and charged substantially the same grounds that it had theretofore alleged and charged in its complaint filed in this action.

23. On October 20, 1941, Judge Schoonmaker filed his opinion (Pittsburgh Forgings Co. v. American Foundry Equipment Co., D.C., 41 F.Supp. 841) wherein, after considering the Hollingsworth and Grocholl matters, he denied Pangborn's application.

24. Final judgment in the Pittsburgh suit was entered on January 26, 1942, making permanent during the life of patent 1,953,566 the preliminary injunction theretofore entered therein.

25. On March 6, 1944, Pangborn, by leave of this Court granted August 3, 1943, filed its amended complaint wherein it alleged more at large its charges with respect to the Hollingsworth-Grocholl matter; that the issuance of the Grocholl patent

2,224,647 was delayed and made unavailable to Pangborn in the Pittsburgh suit by the Hollingsworth-Grocholl interference brought about by American; that the intent and purpose of American in attempting to obtain a patent on Peik application 685,025 was and is to monopolize or attempt to monopolize a part of the trade and commerce among the several states in directional control centrifugal blasting machines.

26. During the prosecution of its application Serial No. 382,256 for the newly issued Patent 2,352,588 to Pangborn, assignee of Rosenberger and Keefer, the patent to Grocholl No. 2,224,647 was cited by the Patent Office as an anticipation. In response thereto Pangborn replied (file wrapper p. 63):

"The patent to Grocholl discloses nothing which is pertinent to the invention for the reason that it does not show a central space between the inner ends of the propelling blades into which a feeding device may be inserted for the discharge of abrasive in a concentrated stream upon the inner ends of the blades. In this patent, the propelling blades extend to the axis of rotation and the abrasive is discharged over the radial side of the blade instead of over its inner axially extending edge. Such a radical change would have to be made in the device of this patent to enable the employment of a control device at its center to deliver abrasive to the inner axially extending edges of the blades that this alteration is not permissible."

27. The counts in Interference 74,841 are these:

"Count 1. An abrading device comprising, in combination, a stationary sleeve, said stationary sleeve having a peripheral aperture, means for feeding an uninterrupted supply of abrasive through the peripheral aperture in said stationary sleeve, a rotary impeller mounted peripherally of said stationary sleeve, said rotary impeller having at least one aperture adapted for registration with the peripheral aperture in said stationary sleeve and extending to the periphery of said rotary impeller, and means for assisting the abrasive from the peripheral aperture in said stationary sleeve into the aperture in said rotary impeller.

"Count 2. An abrading device comprising, in combination, a stationary sleeve, said stationary sleeve having a peripheral aperture, means for feeding an uninterrupted supply of abrasive through the peripheral aperture in said stationary sleeve, a rotary impeller mounted peripherally of said stationary sleeve, said rotary impeller having at least one aperture adapted for registration with the peripheral aperture in said stationary sleeve and extending to the periphery of said rotary impeller, and guide members for angularly directing the abrasive from the peripheral aperture in said stationary sleeve into the aperture in said rotary impeller."

28. The matter and claims transferred by Pangborn from its application Serial No. 726,188 to its new application Serial No. 382,256, embrace and cover all the substantive subject matter of its application Serial No. 726,188 including the subject matter of the claims thereof constituting the counts in issue in Interference No. 74,841.

29. Claims 7, 8 and 9 of Pangborn's new patent No. 2,352,588 were not intended to distinguish from the earlier Rosenberger and Keefer application Serial 726,188. They were intended to cover that structure.

30. The matter and claims transferred by Pangborn from its application Serial No. 726,188, to its new application Serial No. 382,256, embrace and cover all the substantive subject matter of Peik application Serial No. 685,025, and all the substantive subject matter common to that application and to Rosenberger and Keefer application Serial No. 726,188.

31. The transfer by Pangborn to its new application Serial No. 382,256 was calculated and intended by Pangborn to remove beyond the control of this Court the subject matter of this action, and of the counts of Interference 74,841 and other subject matter common to Rosenberger and Keefer application Serial No. 726,188 and Peik application Serial No. 685,025, inso-

far as the patentability of any part of such common subject matter was dependent upon the outcome of Interference No. 74,841.

32. Claims 7, 8 and 9 of Pangborn's United States Letters Patent 2,352,588 were intended to be broad enough to cover, and do cover, Pangborn's former "RA ROTOBLAST" machine adjudged an infringement of the patent and claims in issue in the suit of The American Foundry Equipment Company v. Pittsburgh Forgings Company et al., in which suit priority was awarded to Peik over Rosenberger and Keefer, assignors to Pangborn, as to all patentable subject matter set forth in Peik application 685,025.

33. William F. Hall, Esquire, attorney pro hac vice for Pangborn Corporation, was in this Court and presented the argument on the motions eventuating in the injunctive order of this Court of August 3, 1943. Said William F. Hall, Esquire, has been attorney for Pangborn Corporation in charge of prosecution of Interference No. 74,841; Rosenberger and Keefer application Serial No. 726,188; and Rosenberger and Keefer application Serial No. 382,256, which eventuated in patent 2,352,-588.

34. This proceeding is a civil contempt proceeding.

## Conclusions of Law.

1. Claims 7, 8 and 9 of Pangborn's United States Letters Patent 2,352,588 embrace and cover subject matter common to Rosenberger and Keefer application Serial No. 726,188 owned by Pangborn Corporation, plaintiff herein, and to Peik application Serial No. 685,025 owned by The American Foundry Equipment Company, defendant herein, including the subject matter of the counts in issue in Interference No. 74,841.

2. Claims 7, 8 and 9 of Pangborn's new Patent No. 2,352,588 were not intended to distinguish from the earlier Rosenberger and Keefer application Serial No. 726,188. They were intended to cover that structure.

3. The transfer by Pangborn to its new application Serial No. 382,256 was calculated and intended by Pangborn to remove beyond the control of this Court the sub-

ject matter of this action and of the counts of Interference No. 74,841 and other subject matter common to Rosenberger and Keefer application Serial No. 726,188 and Peik application Serial No. 685,025, insofar as the patentability of any part of such common subject matter was dependent upon the outcome of Interference 74,841.

4. Claims 7, 8 and 9 of Pangborn's United States Letters Patent 2,352,588 are broad enough to, and do, cover Pangborn's former "RA ROTOBLAST" machine adjudged an infringement of the patent and claims in issue in the suit of The American Foundry Equipment Company v. Pittsburgh Forgings Company et al.

5. The transfer by Pangborn from its Rosenberger and Keefer application Serial No. 726,188 to its new application Serial No. 382,256 of the subject matter common to Rosenberger and Keefer application 726,188 and to Peik application 685,025, the prosecution by Pangborn of its said application Serial No. 382,256 and its causing Patent 2,352,588 to be issued thereon after the entry on August 3, 1943 of the injunctive order of this Court, was in disobedience of said injunctive order and in contempt of the authority of this Court.

6. The concealment from this Court by William F. Hall, Esquire, attorney pro hac vice in this Court for Pangborn Corporation, of the facts with respect to patent application Serial No. 382,256, and the transfer thereto of subject matter and claims from application Serial No. 726,188, when the terms of the injunctive order of this Court of August 3, 1943, were under consideration by this Court, constituted misbehavior of said officer of this Court in his official transactions with this Court, and a contempt of its authority.

7. The acts of plaintiff, its officers and attorney, in maintaining this suit to enable it secretly and without the knowledge of this Court or of defendant, and while this action is still pending, to obtain a patent for patentable subject matter described and disclosed in Peik application Serial No. 685,025, constituted a contempt of this Court's authority.

8. Plaintiff's motion, made in paragraph 15 of its response to the rule to show cause

order, to strike section 15 of defendant's petition for a judgment for contempt, must be denied upon the precedent and authority of Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 422, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874.

9. Proposed conclusions with respect to the extent of the relief to which American is entitled are omitted because of the expressed intent of the Court to determine that matter after a hearing with respect to the measure of such relief.

### Memorandum.

The scope of the motion filed by American includes, in its prayer for adjudication of contempt, certain individuals who are alleged to be officers of the Pangborn Corporation. That the corporation, itself a litigant here, and its attorney, who is conducting this lawsuit for it, are before the Court and subject of its lawful processes, there is no doubt. But other individuals are not, even though they are employed by the corporation. The extent of the power of a federal district court to summon before it persons outside the district in which it sits was discussed by the Third Circuit in Orange Theatre Corporation v. Rayherstz Amusement Corporation et al., 1944, 139 F.2d 871, and the discussion need not be repeated here. If there is not jurisdiction to enter an order in contempt, that order does not become valid by the subsequent finding of the defendant within the court's territorial jurisdiction. The question is not one of knowledge of the court's order; the question is one of the court's authority to make an order which imposes any duty of obedience on one outside the court's authority. The decision in Teele Soap Mfg. Co. v. Pine Tree Products Co., Inc., D.C.N.H., 1934, 8 F.Supp. 546 seems to be in point, but, with due deference, it is believed that the language of the learned judge went further than authorities justified. Any relief given in this case, therefore, will be limited to the Pangborn Corporation, itself, and the attorney who is actively conducting its litigation here, Mr. Hall.

The other points in the aspect of the case before the Court at the present time are, it is believed, covered by the findings of fact and conclusions of law set out above and do not need to be further developed by discussion.