**UNITED STATES of America**

v.

**GARDEN HOMES, Inc.**

Civ. A. No. 1035.

United States District Court
D. New Hampshire.
Jan. 4, 1956.

See also, 113 F.Supp. 415.

Maurice P. Bois, U. S. Atty., Concord, N. H., for plaintiff.

Angus M. MacNeil, Somerville, Mass., for defendant.

CONNOR, District Judge.

Proceeding in the above entitled action to determine whether Angus M. MacNeil, president of defendant corporation, is guilty of civil and criminal contempt.

This action was brought to foreclose a mortgage upon a multi-unit housing project situated in Manchester. Garden Homes, Inc., the mortgagor, remained in possession of the premises pending adjudication of the issues, and a receiver for rents and profits was appointed, with authority to reimburse the mortgagor for the necessary expenses incurred in the maintenance and operation of the project. This procedure proved unsatisfactory to Garden Homes, and, claiming it was a hardship to require it to pay these expenses in the first instance, it petitioned this court to instruct the receiver to make payments to it for maintenance upon presentation of proper vouchers detailing the debts incurred. On September 17, 1953, the following order was

entered: "Upon consideration of defendant's motion for instructions, filed August 10, 1953, the receiver, William H. Craig, Jr., and counsel for defendant are directed that payments for maintenance, care, and operation of the property of the corporation are to be paid by the receiver, upon presentation to him of payroll accounts and outstanding bills, if it appears to the receiver that such expenditures have been incurred in the operation of the project and receipts are furnished for all prior payments of similar charges."

It appears that Garden Homes, Inc., was justly indebted to J. J. Moreau & Son, Inc., in the amount of $369.33 for goods used in the maintenance of the project, and to one Joseph Pepin in the sum of $44.64 and one Sal Toscano in the amount of $59.12 for maintenance services. Upon receipt of a proper voucher, signed and certified by Angus M. MacNeil, the receiver, in accordance with the order of September 17, 1953, gave Garden Homes, Inc., sufficient funds with which to satisfy the above debts. The attention of the court was directed to the failure of Garden Homes, Inc., to disburse these funds to the creditors at a hearing held June 27, 1955, upon, inter alia, the receiver's final report. MacNeil was present at this hearing and the court directed as follows: "I am going to give you twenty days to produce that money or issue a citation for you to show cause why you shouldn't be cited for contempt" and Garden Homes, Inc., was informed of this directive. On November 15, 1955, in open court, the court inquired of MacNeil whether its directive had been complied with, and, advised that it had not, gave him notice pursuant to Rule 42(b) of Federal Rules of Criminal Procedure, 18 U.S.C., that a hearing would be held to determine whether he was guilty of civil and criminal contempt. The court stated the essential facts constituting the offense charged.

██ The order of September 17, 1953, when read in light of the issues it resolved, the discussion at the hearing and

its purpose, was a directive to Garden Homes, Inc., and necessarily to those persons responsible for the conduct of that corporation, establishing a procedure for payment of maintenance expenses. The rents and profits collected by the receiver were in custodia legis, and Garden Homes, Inc., was not at liberty to deal as it saw fit with funds obtained from the receiver. Failure to disburse these funds to the creditors on the vouchers submitted for the purpose of obtaining such was a violation of the court's order. The obligation of the corporation in this respect was at least tacitly recognized by its president, MacNeil. At the hearing on defendant's motion for instructions, the following representation was made: "The Court: It might be a substantial amount. Mr. MacNeil: It might be a substantial amount, but Garden Homes' credit—and we are officers of the Court here and we are certainly not going out to do something that is contrary to the law on it." Significantly, Garden Homes, Inc., did not attempt to retain funds received from the receiver until foreclosure had been decreed and a sale of the property was imminent. The parties operated under this arrangement for a considerable period without any difficulty, and the items now in controversy were contained in the final voucher.

██ MacNeil was responsible for the defendant corporation's conduct. A corporation can only act through its agents, and he was then and still is its president, the only person who has ever appeared qua attorney or otherwise before this court in behalf of the corporation, and the signatory of practically every document filed in court. It cannot be doubted that he was in full control of this litigation in behalf of Garden Homes, Inc. He was the person who certified to the receiver that the items now in controversy were justly due and owing for necessary maintenance. Under the circumstances, he was an officer having an affirmative duty to cause the corporation to conform with the orders of the court. He was largely, if not solely, responsible

for the corporation's non-compliance, and may be held therefor, although the obligation is not a personal one. Parker v. United States, 1 Cir., 126 F.2d 370; Teele Soap Mfg. Co. v. Pine Tree Products Co., Inc., D.C., 8 F.Supp. 546.

On June 27, this court directed Mac-Neil to pay these items, and he has persistently refused and presently refuses to do so.

The failure to pay these items, totaling $473.09, has to that extent damaged the plaintiff, for it is entitled to receive the moneys in the hands of the receiver, and that fund has been depleted by that amount. The only right of Garden Homes, Inc. to the funds it received from the receiver was to pay them to its creditors, and, failing, it cannot retain them.

Therefore, it is my opinion and I so find MacNeil to be in civil contempt for violating the orders of this court. Accordingly he is ordered, as an officer of this court and of the corporation, to cause Garden Homes, Inc., to return to the receiver the sum of $473.09, and to be committed to the custody of the United States Marshal for this district until this order is complied with.

It is clear that the same conduct may constitute both a civil and a criminal contempt. Both aspects may be dealt with in the same proceedings. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. MacNeil was given notice in accordance with Rule 42, Federal Rules of Criminal Procedure, and he was accorded all the rights a defendant has in a criminal contempt proceeding. His conduct was such as to call for punishment in order to preserve the power and to vindicate the authority of this court.

Additionally, it is my view that as an officer of this court MacNeil misbehaved in an official transaction. At the time the order of September 17, 1953, was entered, he was recognized by this court as counsel for Garden Homes, Inc. It is clear that an attorney appearing before a court is an officer thereof. Cammer v. United States, 96 U.S.App.D.C. 30, 223 F.2d 322. The transaction in which this difficulty arose was so closely under the supervision of the court as to be official transaction within the scope of Title 18 U.S.C. § 401(2). The part MacNeil played in the misappropriation of the funds received from the receiver was misbehavior of the highest degree.

It is my finding and ruling that Mac-Neil is in violation of Title 18 U.S.C. § 401(2) and (3), and he is ordered to pay to the clerk of this court a fine of four hundred dollars, together with costs in the amount of one hundred thirty-seven dollars and fifty-nine cents.

Judgment will be entered accordingly.