27 C.C.P.A. (Patents)

## PEIK v. ROSENBERGER et al.

### Patent Appeal No. 4319.

Court of Customs and Patent Appeals.

July 1, 1940.

Albert M. Austin, of New York City, James P. Burns, of Washington, D. C., and Reuben T. Carlson, of New York City (Frederic D. McKenney, of Washington, D. C., of counsel), for appellant.

William F. Hall and Charles M. Thomas, both of Washington, D. C., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences awarding priority of the subject matter defined in the three counts in issue to appellant, Louis D. Peik, the senior party.

The interference is between appellant's application No. 685,025, filed August 14, 1933, and appellees' application No. 726,-188, filed May 17, 1934.

Appellees are the junior party, and the burden was upon them to establish priority of invention by a preponderance of the evidence.

Many questions raised by counsel for the parties and decided by each of the tribunals of the Patent Office are discussed at considerable length and more or less acrimoniously in the briefs before us. However, as we see it, the real issue presented to us for consideration is whether or not appellant's application discloses the invention defined by the counts in issue. Being of opinion that it does not, it is un-

necessary for us to consider other issues presented.

The invention in issue relates to an abrading machine and, for the purpose of this particular case, is sufficiently described in the appealed counts which originated in appellees' application and of which count 1 is illustrative. It reads: "1. In an abrading machine, a rotor having a plurality of *substantially radially disposed blades* provided thereon, said blades terminating short of the axis of said rotor to define an abrasive admitting space, a substantially cylindrical abrasive feeding device of an external diameter less than the radius of the rotor extending into said space and having a discharge opening therein disposed to one side of the axis of said rotor and located between the planes of rotation defined by the sides of said blades for delivering abrasive to the inner ends of said blades, said blades terminating sufficiently close to said feeding device to pick up the abrasive with a minimum impact and *said blades having* *substantially smooth and uninterrupted abrasive-propelling surfaces of sufficient length to accelerate the abrasive smoothly and continuously and without abrupt changes in a substantially radial direction and discharge it from the outer ends of said blades at an abrading velocity when said rotor is rotated,* a rotatable impeller comprising a plurality of impeller vanes disposed within said feeding device, said vanes extending to a region closely adjacent the axis to define a comparatively small axially extending passage, and means for introducing abrasive into said passage and over the inner edges of said vanes, said vanes being operable to impel abrasive through said discharge opening." (Italics ours.)

The italicized portion of the quoted count clearly describes the disputed feature of the involved invention.

In order that the issues may be clarified, we here reproduce figure 3 of appellant's drawings and figure 4 of appellees' drawings:

FIG. 3 OF APPELLANT'S DRAWING.

FIG. 4 OF APPELLEES' DRAWING.

_Fig. 4_

In his decision, the Examiner of Interferences defined the invention in the following language: "The invention involved in this interference comprises a rotatable member of hollow wheellike structure and includes radially disposed blade terminating short of the center of the wheel to define a central opening. A stationary ring or cage is positioned in this central space and is provided with a single discharge opening in its side to pass abrasive fed therein to the inner edges of the blades. A rotary impeller is positioned within the cage to facilitate the feeding of abrasive to the blades. Upon rapid rotation of the wheel the abrasive is thrown from the outer ends of the blades due to the centrifugal forces set up. Since abrasive is fed only at one point from the cage the greater portion thereof leaves the outer ends of the blades throughout an arc which is less than the entire circumference of the wheel."

It is apparent from the reproduced figures that each of the parties contemplated that the abrading material should be thrown with great velocity against the object to be abraded. The question for determination, however, is whether appellant's device is so constructed as to conform to the italicized portion of the count hereinbefore quoted.

It will be observed from an examination of appellant's figure 3, hereinbefore reproduced, that the configuration at 50 is convex rather than concave, and that the element 60, which is described as being a hardened and removable liner plate, is so arranged on the propeller blade 13 as to act as a so-called "buffer" for the abrading material; whereas, in appellees' device, as is clearly indicated in the reproduced figure 4, the front parts of the blades are curved gradually so as to prevent any abrupt changes in direction of the abrading material. That being so, the abrasive propelling surfaces of appellees' blades are in such form as to discharge the abrasive material from the outer ends thereof without abrupt changes in a radial direction; whereas, it is obvious from a consideration of appellant's figure 3 that the discharge of the abrasive material from the blades in appellant's structure is interrupted by abrupt changes in a radial direction.

Counsel for appellant argue that both parties were actuated by the same purpose, that is, to prevent wear on the "impeller blades or discharge device" which rendered the rotors exceedingly short lived, and that

appellant's disclosure is adapted to positively control the stream of the abrasive material coming from the periphery of the centrifugal device by the particular design of the structure here involved.

The difficulty with that argument is that appellant's structure is not in such form as to support the particular limitations of the counts.

In its decision, the Board of Appeals referred to the italicized portion of count 1, and, in discussing the right of appellant to make the claims constituting the counts in issue, said: "* * * The abrasive in the Peik application does not flow smoothly and continuously and without abrupt changes in a substantially radial direction. Instead, the abrasive appears to change its direction abruptly several times before it emerges from the wheel. We have made a close study of the structure set forth in the Peik drawing and original specification. We are unable to find disclosed in it a wheel provided with 'blades having substantially *smooth and uninterrupted abrasive propelling surfaces* of sufficient length to accelerate the abrasive *smoothly and continuously and without abrupt changes in substantial radial direction.'* This is one of the limitations in the counts."

Although the board in its decision referred to the evidence in the case, we deem it unnecessary to do so because we think it is clear from the applications of the parties that appellant is not entitled to make the claims constituting the counts in issue.

▮ After the record filed with the clerk of this court had been printed, appellees filed an application for *writ of certiorari* to have included, as a part of the record, copies of certain papers, alleging that they were material to the proper consideration of the case. We find that only one paper listed in appellees' motion was proper and essential to be included. The costs of *printing* that paper—identified as item (5)—will be taxed against appellant. The costs of printing the other papers in appellees' motion, namely, items (1), (2), (3), and (4) will be taxed against appellees.

The decision of the Board of Appeals is affirmed.

Affirmed.