## PANGBORN CORPORATION v. AMERICAN FOUNDRY EQUIPMENT CO.

## AMERICAN FOUNDRY EQUIPMENT CO. v. HALL (two cases).

### Nos. 8991, 9004, 9025.

Circuit Court of Appeals, Third Circuit.

Argued April 16, 1946.

Decided Aug. 12, 1946.

As Amended on Denial of Rehearing Nov. 16, 1946.

Robert T. McCracken, of Philadelphia, Pa., and Charles M. Thomas, of Washington, D. C.. (William S. Potter, of Wilmington, Del., and C. Russell Phillips, of Philadelphia, Pa., on the brief), for appellants.

Hugh M. Morris, of Wilmington, Del. (Albert M. Austin, of New York City, on the brief), for appellees.

Before BIGGS and O'CONNELL, Circuit Judges, and GOURLEY, District Judge.

BIGGS, Circuit Judge.

The three appeals at bar are in reality but two. The first, that at our No. 8991 (Civil Action No. 193 in the court below), is that of Pangborn Corporation (Pangborn) from an order of the court below denying Pangborn or anyone claiming under it the right to prosecute any proceeding based on Rosenberger and Keefer Patent No. 2,352,588, against The American Foundry Equipment Company (American). The two other appeals, respectively at our Nos. 9004 and 9025, were taken by William F. Hall, Esquire, a member of the Bar of the District of Columbia, admitted pro hac vice to prosecute Pangborn's suit against American in the court below in Civil Action No. 193 from an order adjudging him guilty of contempt. Mr. Hall has appealed twice from the same order, once as if he had been adjudged guilty of a civil contempt, next as if he had been found guilty of a criminal contempt. It will be appropriate to dispose of all of the three appeals in a single opinion. The facts are complicated and must be stated in some detail.

We must concern ourselves first with a series of patent applications and interferences which grew out of them; second, with patents issued on certain of these applications; and, third, with certain suits growing out of the foregoing. The machine or device involved in all of the applications, patents and suits is one which projects a granular medium at high velocity against an object to remove surface material by abrasive or attritive action. In simpler words the device with which we are concerned is one by which an abrasive material such as shot or sand is hurled against a casting to be cleaned, a stone monument to be inscribed, or a piece of glass to be engraved. American's machine is called a "Wheelabrator" and Pangborn's is called an "RA Rotoblast".

The interferences with which we are concerned are as follows.

(1) (a) On July 9, 1935, an interference, No. 71,085, was instituted in the Patent Office between Peik application S. N. 685,025, subsequently owned by American, and Rosenberger and Keefer application S.N. 726,188, assigned to Pangborn. This interference reached the Court of Customs and Patent Appeals. See Peik v. Rosenberger, 113 F.2d 129. The Examiner of Interferences had awarded priority of the subject matter of the three counts in issue to Peik. The Board of Appeals reversed the Examiner. The Court of Customs and Patent Appeals affirmed the decision of the Board of Appeals. The question presented was whether Peik application S.N. 685,025, the disclosure of which was embodied in the drawing which Peik presented to his attorney, Sprinkle, under circumstances referred to hereinafter, disclosed a structure which would entitle Peik to preëmpt three of Rosenberger and Keefer's claims from their application S.N. 726,188. The Court of Customs and Patent Appeals held that it was clear from the applications of the parties that Peik was not entitled to make the claims constituting the counts in issue.

(b) On November 30, 1937, another interference, No. 74,841, was instituted be-

tween Peik application S.N. 685,025 (American), Rosenberger and Keefer application S.N. 726,188 (Pangborn), and Peterson application S.N. 59,455. Peterson was the shot-blast foreman at the Gary Tin Mill of the American Sheet and Tin Plate Company, who had aided Peik in the latter's test of the machine of his patent No. 1,953,-566, referred to at length under (2) of this opinion.

(c) On December 22, 1937, another interference, No. 75,177, was instituted between Peik application S.N. 685,025 (American) and another Keefer application owned by Pangborn.

It will be observed that the Peik application S.N. 685,025 was involved in all these interferences. It will be noted also that a continuation in part of Rosenberger and Keefer S.N. 726,188, viz. S.N. 382,256, matured into Pangborn Patent No. 2,352,588.

(2) On February 4, 1936, American sued Pittsburgh Forgings Company (Forgings) and Pangborn in the District Court of the United States for the Western District of Pennsylvania alleging that Forgings and Pangborn had infringed Peik Patent No. 1,953,566 issued April 3, 1934 upon application S.N. 708,118 filed January 24, 1934. This suit is referred to by the parties to the case at bar as the "Pittsburgh suit". We will so refer to it from time to time. Judge Schoonmaker held claims 8, 9, 12, 14–17 of the patent to be valid and infringed. See 38 USPQ 333-6. He stated that the claims infringed were " * * * for a blasting machine of a centrifugal type, intended for the projecting of abradant particles such as sand shot or other grits. The invention is said to rest in the directional properties of the machine in that it is possible to project the blast over a desired limited zone." See 67 F.Supp. 911. The opinion was handed down on January 10, 1938. Conceding that the conception of a centrifugal blasting wheel (one using centrifugal force by throwing the abradant particles from a revolving wheel as distinguished from one in which the particles were blown from the device by air pressure) was old, Judge Schoonmaker pointed out

that an earlier wheel, conceived by Hollingsworth, was operated with a shroud around its periphery to assist in directing the abradant; that such a shroud wore out rapidly and had to be replaced repeatedly; and that the problem of directional control of the discharge blast was solved by Peik's wheel which received the abradant at the center and sent it out over the inner edges of throwing blades, the abradant being discharged from the periphery in a limited arc in any desired zone about the wheel.

The trial judge said, 67 F.Supp. 913, "The claims of the patent in suit are not limited to the particular type of spiral throwing blades preferred by Peik, so that the form of the throwing blades is not involved in this suit." Despite the contents of that portion of the sentence just quoted, viz., the part following the comma, an examination of the record in the case shows clearly that the defendants did make the form of the throwing blades an issue in the suit, attempting to distinguish the blades of their accused device from those of the machine of Peik's patent. Judge Schoonmaker ruled, therefore, as American contends in the case at bar, that Peik's invention possessed the status of a pioneer invention and that his patent covered any centrifugal rotating wheel, the blades of which, sans shroud, would discharge the abradant from the periphery of the wheel through a limited arc in a desired zone about it. The statements to this effect by the learned trial judge were actually dicta except insofar as the accused machine and the prior art cited to him were concerned.

The question of priority of invention was very much to the fore in the Pittsburgh suit. Judge Schoonmaker pointed out in his opinion that Peik, not being satisfied with the Hollingsworth wheel made by American, set out to work secretly at home on the problem of directional control; that on March 7, 1933, he made a drawing showing a wheel with comparatively narrow passages extending from a circular opening to the periphery;[1] that he assembled this wheel at home and tested it in April, 1933;

---

[1] See Plaintiff's Exhibit No. 74 in the suit in the Western District of Pennsylvania, "Original Drawing left with Attorney Sprinkle by Peik June 21, 1933."

that on June 21, 1933, he consulted with his patent attorney, Mr. Sprinkle,[2] and was advised that the invention was his own property; that Sprinkle prepared a patent application for this device for Peik in July, 1933; and that Peik executed this application on August 9, 1933. Judge Schoonmaker, regarding the drawing (Plaintiff's Exhibit No. 74 in the Pittsburgh suit) as of primary importance, awarded March 7, 1933, to Peik as the date of his conception of the invention, and held that Rosenberger and Keefer, who, apparently, were then employed by Forgings and Pangborn, could not achieve a date for the invention of their device earlier than December, 1933. Judge Schoonmaker thereupon awarded priority of invention to Peik.

The application filed by Sprinkle for Peik on August 14, 1933, received the serial number in the Patent Office 685,025, and is the application included in the interferences enumerated in (a), (b) and (c) supra. It will be observed that the shape of the channels running to the periphery of the wheel in the drawing left by Peik with Sprinkle are different in shape than those shown in Figure 1 of the drawings accompanying the Peik Patent No. 1,953,566. It should be observed also that the application S.N. 708,118 on which the Peik patent involved in the Pittsburgh suit was filed on January 24, 1934, more than five months after application S.N. 685,025 went into the Patent Office. Whether or not Peik was entitled to make use of the original drawing upon which S.N. 685,025 was based to prove the date of the conception of the invention embraced in his Patent No. 1,953,566, is a question not presently open for discussion insofar as the Pittsburgh suit is concerned. The decision of Judge Schoonmaker was affirmed by this court, Pittsburgh Forgings Co. v. American Foundry Equipment Co., 3 Cir., 102 F.2d 964, and certiorari was denied by the Supreme Court, 308 U.S. 566, 60 S.Ct. 78, 84 L.Ed. 475. Judge Schoonmaker's decision became and has remained the law of that case.

Thereafter Forgings and Pangborn filed in this court a petition for leave to file a complaint in the nature of the bill of review and for hearing in the District Court for the Western District of Pennsylvania. The prayer of the petition was granted. See Pittsburgh Forgings Co. v. American Foundry Equipment Co., 3 Cir., 119 F.2d 619. On April 24, 1941, Forgings and Pangborn filed their petition for leave to file a complaint in the nature of a bill of review and for rehearing in the District Court for the Western District of Pennsylvania. Judge Schoonmaker held that the defendants' petition should be considered as the equivalent of a petition for rehearing, citing Simmons v. Grier Bros. Co., 258 U.S. 82, 90, 42 S.Ct. 196, 66 L.Ed. 475. Briefly the issues presented by Pangborn and Forgings were based on alleged newly discovered evidence, viz., a patent to Grocholl, No. 2,224,647, for a directional control blasting machine asserted to have an effective date prior to any awarded to Peik, and a directional control blasting machine alleged to have been asserted by American in the Patent Office to have been used successfully in the United States by Hollingsworth at least as early as 1929. Pangborn and Forgings also insisted that these two items of alleged newly discovered evidence proved that American had misrepresented the state of the prior art to the court. Judge Schoonmaker decided that no rehearing was required. See Pittsburgh Forgings Co. v. American Foundry Equipment Co., D.C., 41 F.Supp. 841. No appeal was taken to this court.

(3) The complaint in the case at bar, though it contains much else, is built in large part around Peik's application S.N. 685,025. It asserts that application S.N. 708,118, upon which Patent No. 1,953,566 issued, was filed as a substitute for the earlier application S.N. 685,025, and with the intention of permitting that application to become abandoned; that it was in fact abandoned by reason of a failure to respond to a letter of rejection issued by the Patent Office dated October 14, 1933; that on or about March 9, 1935, a petition was filed with the Commissioner of Patents praying that the "abandoned" Peik application S.N.

---

[2] The attorney's name is given in the cited report as Ray Springle. It would appear, however, that his name was actually Arthur L. Sprinkle.

685,025 be revived, certain supporting documents being filed with the petition; that the revival of the application followed; that the representations made to the Commissioner by the petition to revive and by its supporting documents were "false and fraudulent" and that the Commissioner was deceived thereby. The complaint also alleges that on November 30, 1936, Pangborn filed a petition with the Commissioner praying that the order reviving the Peik application be vacated and that the application be returned to the abandoned files of the Patent Office; that the interference at No. 71,085 ((1) (a) supra) be dissolved; that on March 17, 1937, Pangborn's petition was denied by the Assistant-Commissioner upon the decision in Terry v. Webster, 56 App. D.C. 198, 12 F.2d 139, 1927 C.D. 99, certiorari denied 273 U.S. 709, 47 S.Ct. 100, 71 L.Ed. 852, and that thereafter the interference at No. 71,085 proceeded in due course, culminating in the decision, hereinbefore referred to, of the Court of Customs and Patent Appeals of July 1, 1940, in favor of Pangborn.

The complaint goes on to refer to numerous interference proceedings, including those hereinbefore set out, and asserts that "additional interferences may be instituted between applications for patents filed in the Patent Office and the * * * Peik application Ser. No. 685,025, ad infinitum, and in consequence, if the Commissioner of Patents is impotent as in his decision of Dec. 23, 1940 [based on Terry v. Webster] he asserts he is, to consider, during the pendency of an interference in which the Peik application is involved * * * American * * * will be permitted to use [the] revived application as an instrument for defrauding just and worthy inventors, including plaintiff, of their rights * * *".

The complaint also refers to certain applications of Hollingsworth, in particular, Hollingsworth application S.N. 570,782, and describes the Hollingsworth disclosures at some length, asserting that American by reason of an agreement made with Hollingsworth has obtained all rights to those applications and has attempted to corrupt them by radical and unwarranted alterations of such a character as would invalid-

ate Rosenberger and Keefer application S.N. 726,188; that American "cloaked as Hollingsworth" also moved on September 6, 1935, for a declaration of interference between Hollingsworth's applications and Grocholl Patent No. 2,224,647; that the interference between Hollingsworth and Grocholl was declared as requested (at No. 72,090 in the Patent Office) and that if Hollingsworth (American) prevails over Grocholl it will cause great injury to Pangborn though in what particular respects is not specified.

The complaint prays the court below to issue an injunction against American restraining it from prosecuting interference No. 74,841 or any other interference in which Peik application S.N. 685,025 is involved with an application for a patent owned by Pangborn; that American be required to take such action in respect to application S.N. 685,025 as may be required to restore it to the status of an abandoned patent, and that American "be estopped" from any action to obtain a patent on the Hollingsworth applications heretofore referred to based on any interpolated subject matter.

American filed a motion to dismiss the complaint upon the ground, inter alia, that granting the relief which Pangborn seeks would restrain the Commissioner of Patents in the performance of the duties imposed by him by statute. Pangborn filed a motion for a preliminary injunction. Thereafter, American filed a motion for summary judgment basing this on an agreement entered into by Pangborn and American on December 31, 1941, which provided that the interferences Peterson v. Rosenberger and Keefer v. Peik No. 74,841, and another interference, Keefer v. Peik, No. 75,177 be settled. Attached to this motion were copies of notices given under Rule 107 of the Rules of the Patent Office, 35 U.S.C.A. Appendix, whereby American and Peik consented to entries of abandonment of contest in interferences Nos. 74,841 and 75,177. A letter, dated December 31, 1941, professes to be a part of the agreement referred to.

The court below held [3] that it possessed "jurisdiction" to grant the relief prayed for by Pangborn; that Pangborn's allegations

---

[3] See 69 F.Supp. 429.

entitled it to relief if proved; that insofar as the Hollingsworth applications were concerned the complaint made no averment that American's position in respect to the Hollingsworth applications would in fact affect Pangborn injuriously. It held that the agreement of December 31, 1941 did not obviate Pangborn's need for relief; that the letter at the most represented an executory contract and that American had not completed its performance thereunder. The court below overruled American's motion for summary judgment based on the agreement of December 31, 1941, granted American's motion to dismiss insofar as any asserted cause of action based upon the Hollingsworth applications was concerned and overruled American's motion to dismiss as to the cause of action based upon Peik application S.N. 685,025. The court denied Pangborn's motion for a preliminary injunction, without prejudice, however, to its right to renew its application upon a showing that such an injunction was necessary for the preservation of its rights pending the determination of the cause on the merits.

Pangborn almost immediately filed a second motion for a preliminary injunction supported by an affidavit of Mr. Hall. Attached to this affidavit was a copy of a letter written by him on June 5, 1943, to counsel for American in which he referred to the opinion of the District Court, stating in part, "If I could have the assurances of yourself or Mr. Austin [one of American's counsel] that no testimony will be taken on behalf of Peik in Intf. 74,841, Peterson v. Rosenberger and Keefer v. Peik, and Intf. 75,177, Keefer v. Peik, pending the determination on the merits of Civil Action 193 [the suit at bar], it would be unnecessary for me to bring a motion for a preliminary injunction * * * otherwise this would be necessary. Of course, I would agree that Peik should be prejudiced in no way by such agreement, should the civil action be dismissed."

The court below entered an order on June 15, 1943, based upon its opinion. On July 27, 1943, American filed an answer which in substance denied that Peik's application S.N. 685,025 had been revived by fraudulent representations to the Commissioner and recited the proceedings hereinbefore referred to at some length in (2) supra respecting the proceedings in the Western District of Pennsylvania and in this court, viz., in the Pittsburgh suit, whereby Peik's Patent No. 1,953,566 was held to be valid and infringed, asserting that Figures 1, 2, 3 and 4 of the drawings of the Rosenberger and Keefer application S.N. 726,188 disclosed the centrifugal blasting machines manufactured by Pangborn in 1934 and thereafter and asserting also that the machines so made were covered by the injunction and the accounting in the Pittsburgh suit; that the delay in the revival and prosecution of Peik's application S.N. 685,025 had been held to be unavoidable by an Assistant Commissioner of Patents in an order made by him on May 23, 1935. As a further answer to the complaint and as a counterclaim American again set up the proceedings in the Western District of Pennsylvania before Judge Schoonmaker and in this court and asserted that Pangborn, priority of invention having been awarded to Peik in the Pittsburgh suit, was estopped from prosecuting interferences Nos. 74,841 and 75,177 and was estopped as well from asserting that as between Peik and Rosenberger and Keefer, or either Rosenberger or Keefer, that Patent No. 2,212,451, issued to American on August 20, 1940, upon a division of Peik's application S.N. 685,025 and therefore entitled to the filing date of August 14, 1933, viz., the filing date of S.N. 685,025, also barred Pangborn from prosecuting the two interferences enumerated. American also set up the agreement of December 31, 1941, which had served as the basis for its motion to dismiss the suit at bar as moot, insisting in effect that the interferences had been disposed of by that agreement and that Pangborn was harrassing it by repeated motions to dismiss American as a party to the interferences to the end that Pangborn might escape the impact of Judge Schoonmaker's decision in the Pittsburgh suit. American alleged that Peik was entitled to priority as to the machine disclosed in the drawing which he had submitted to his attorney, Sprinkle, as stated by Judge Schoonmaker

in his opinion in the Pittsburgh suit and that for these reasons Pangborn did not come into the court below with clean hands.

American's answer and counterclaim ended with a prayer that Pangborn's complaint be dismissed and that Pangborn be enjoined from further prosecution of Interferences Nos. 74,841 and 75,177 and from contending as the assignee of Rosenberger and Keefer, that it is entitled to priority over Peik with respect to any matter disclosed or set forth in the specifications or drawings of Peik application S.N. 685,025 or in the specification or drawings of Patent No. 2,212,451 to Peik. American prayed also that Pangborn, its officers and attorneys, be enjoined during the pendency of the suit and perpetually thereafter from directly or indirectly making any attempt to have either Peik or American dissolved out of any interference or interferences wherein any count or counts were based upon or arose out of any disclosure made by Peik in his application S.N. 685,025. American then moved for a preliminary injunction based upon its answer and counterclaim supporting its motion by an affidavit of one of its counsel.

Pangborn then moved for leave to amend its complaint, incorporating its proposed amendment in the motion. This new matter consists in large part of technical descriptions of the prior art machines to distinguish between Peik's structure as disclosed by S.N. 685,025 and the Rosenberger and Keefer application S.N. 726,188. See again the decision of the Court of Customs and Patent Appeals in Peik v. Rosenberger, supra, 113 F.2d at pages 130–132. The complaint refers also to the Grocholl Patent No. 2,224,647, claiming an established invention date for Grocholl of May 10, 1930. See (2) supra. Reference is made in the proposed amended complaint to the Hollingsworth application and to a Canadian patent issued to American on a Hollingsworth application filed in the Dominion which, it is alleged, embraces the substance of all Rosenberger and Keefer disclosures. It is asserted also that American seeks to monopolize the field for mechanically propelling abrasive machines in violation of the anti-trust laws of the United States and Pangborn seeks treble damages.

Thereafter upon motions of both Pangborn and American for preliminary injunctions the case came on for hearing before the court below on July 28, 1943. On August 3, 1943 the court issued an injunction which provided inter alia, "That each of the parties, its officers, agents, employees and attorneys, and each of them, pending the determination of this cause on the merits, or until the further order of this Court, be and each hereby is enjoined and restrained from the further prosecution of interference Nos. 74,841 and 75,177, now pending in the United States Patent Office, or from prosecuting any other interference or interferences in which the application for patent of Peik Serial No. 685,025 may hereafter be involved with an application for patent owned by the plaintiff [Pangborn]; * * *". The same order granted leave to Pangborn to file its amended complaint.

After the injunction issued the following appeared: Rosenberger and Keefer on March 7, 1941, within two months after the filing of the suit at bar, filed an application S.N. 382,256 for a directional control centrifugal blasting machine. This was sent to the Patent Office by Mr. Hall acting for Pangborn. Mr. Hall's letter dated March 7, 1941 stated in part, "Certain claims of this application are now in an application Serial No. 726,188 of William A. Rosenberger and Walter L. Keefer, filed June 17, 1934. These transferred claims will be cancelled from the latter application." The application, S.N. 382,256 stated that it was "* * * intended as a continuation in part of our [Rosenberger and Keefer] application Serial No. 726,188 filed May 17, 1934." As has been stated Rosenberger and Keefer application S.N. 726,188 was in issue in Interferences Nos. 71,085 and 74,841. On June 27, 1944, Patent No. 2,352,588 issued to Pangborn upon application S.N. 382,256. At the argument on July 28, 1943 neither Pangborn nor anyone acting upon its behalf disclosed to the court or to American the existence of application S.N. 382,256 and the transfer thereto of claims 7, 8 and 9 of the Rosenberger and Keefer application S.N. 726,188. The first knowledge of the issuance of Patent No. 2,352,588 to Pangborn, as the assignee of

Rosenberger and Keefer, came to the trial judge and to American in a letter dated July 6, 1944, written to him by Mr. Hall, a copy of which was sent to counsel for American.

On August 21, 1944, American filed a petition praying that Pangborn, certain of its officers, and Mr. Hall as its solicitor be adjudged to have been guilty of contempt of the court and that each of them be punished therefor. A rule to show cause issued on this petition and hearing was had upon September 6, 7 and 8, 1944, upon American's verified petition, Pangborn's response to the show cause order, affidavits filed by and on behalf of the respective parties and upon the other pleadings, proceedings, affidavits, documents and exhibits in the main action. The court below made findings of fact and conclusions of law and filed a memorandum.[4] It held that the proceeding was one for civil contempt. It concluded that the "concealment" from it by Mr. Hall as attorney pro hac vice for Pangborn of the facts relating to application S.N. 382,256 and the transfer thereto of the claims enumerated from application S.N. 726,177 "when the terms of the injunctive order of this Court of August 3, 1943 were under consideration by this Court" constituted "misbehavior by * * * [Mr. Hall] in his official transaction with this Court, and a contempt of its authority." The court also concluded that "the acts of plaintiffs, its officers and attorney, in maintaining this suit [the suit at bar, Civil Action 193] to enable it secretly and without the knowledge of this Court or of defendant, and while this action is still pending, to obtain a patent for patentable subject matter described and disclosed in Peik application S.N. 685,025 constituted a contempt of this Court's authority."

In its findings of fact in the contempt proceeding the court found inter alia that "The matter and claims transferred by Pangborn from its application Serial No. 726,188 to its new application Serial No. 382,256, embrace and cover all the substantive subject matter of Peik application Serial No. 685,025 and all the substantive subject matter common to that application and to Rosenberger and Keefer application Serial No. 726,188.", that "The transfer by Pangborn to its new application Serial No. 382,-256 was calculated and intended by Pangborn to remove beyond the control of this Court the subject matter of this action, and of the counts of Interference 74,841 and other subject matter common to Rosenberger and Keefer application Serial No. 726,188 and Peik application Serial No. 685,025, insofar as the patentability of any part of such common subject matter was dependent upon the outcome of Interference No. 74,814.", and that "Claims 7, 8 and 9 of Pangborn's United States Letters Patent 2,352,588 were intended to be broad enough to cover, and do cover, Pangborn's former 'RA Rotoblast' machine adjudged an infringement of the patent and claims in issue in the suit of The American Foundry Equipment Co. v. Pittsburgh Forgings Company * * * [and Pangborn Corporation], in which suit priority was awarded to Peik over Rosenberger and Keefer, assignors to Pangborn, as to all patentable subject matter set forth in Peik application 685,025."

It will be observed that the court below made findings of fact in which it adjudged the scope of claims of patents or patent applications as if Civil Action No. 193 were on final hearing. The findings and conclusions, however, were made in the contempt proceeding, which may be described as a proceeding sub the main cause. It should be pointed out that neither Pangborn nor Mr. Hall make objection to the form in which the findings and conclusions are cast though they do assert that the trial judge was without authority to make the order adjudging Mr. Hall guilty of contempt and imposing punishment on Pangborn because the designation of the trial judge by the present writer as Senior Circuit Judge was not broad enough to extend his jurisdiction in a proceeding sub the cause to which he was assigned, viz., Civil Action No. 193.[5] Both Pangborn and Mr. Hall concede that claims 7 to 10 of

---

4 See 69 F.Supp. 429.

5 We cannot agree with this contention. If it were correct a judge sitting by virtue of a designation by The Chief Justice of the United States or by a circuit justice or by a senior circuit judge pursuant to Section 13 of the Judicial Code, 28 U.S.C.A. § 17, would be power-

Patent No. 2,352,588 are broad enough to read upon Pangborn's RA Rotoblast. Their substantial defenses lie in other directions as will appear.

Following the filing of findings of fact, conclusions of law and the memorandum by the court below, there were further hearings. On January 2, 1945, American made a motion for the restoration of the status quo as of the issuance of the injunction of August 3, 1945. On May 4, 1945, the court filed a memorandum opinion,[6] ruling that American was entitled to a restoration of the status quo stating in part, "This is not punishment for contempt, nor is it an interference with the Patent Office or the relations between a patentee or the government department issuing the patent. It is an application of the clean hands doctrine. * * * The order will not direct Pangborn to give up its patent or anything of the sort. Instead it will be directed only as against any use or claim which Pangborn may make on this new patent as against American. * * * American may proceed on its counterclaim for whatever relief it deems itself entitled to. * * *" On May 31, 1945, the court entered an order granting American's motion for the restoration of the status quo and adjudging Pangborn was without right to prosecute any action or proceeding based on Patent No. 2,352,588 or any claim thereof against American and all persons in privity with it, and perpetually enjoined Pangborn from prosecuting any such action. Thereafter,

on July 5, 1945, the court below entered an order adjudging Mr. Hall to be in contempt and ordered him to pay a fine of $100 as reimbursement to American on account of its costs and expenses incurred by reason of the acts charged against Mr. Hall in the contempt proceeding. The order was made without prejudice to the right of American to obtain an order in the proceeding directed to Pangborn to require it to pay American a fine in such amount as the court should deem proper on account of American's costs and expenses caused by Pangborn's acts as alleged in the contempt petition. The appeals at bar followed.

Pangborn and Mr. Hall attack the orders of May 31 and July 5, 1945, on a number of grounds. They assert that no matter how the injunction of August 3, 1943, is read it is clear that it was not intended by the court below that Pangborn or Rosenberger and Keefer should be restrained from prosecuting their application S.N. 382,256, a continuation in part of application S.N. 726,188, to which were transferred those claims from the latter application which became in fact claims 7, 8 and 9 of Patent No. 2,352,588 as issued. Claim 7 now contained in that patent may be considered as typical[7] for the purposes of this opinion.

In this connection Pangborn and Mr. Hall contend, contrary to the first conclusion of law of the court below, that Patent No. 2,352,588, issued on application S.N. 382,256, does not include any substantive

---

less to punish a contempt committed in the presence of the court or to enforce an order of the court by contempt proceedings.

[6] Not reported for publication.

[7] Claim 7 is as follows: "In a centrifugal blasting machine, a rotor having a plurality of substantially radially disposing blades provided thereon, said blades terminating short of the axis of said rotor, a substantially cylindrical abrasive feeding device of an external diameter less than the radius of the rotor positioned coaxially of said rotor and having a discharge opening therein disposed to one side of the axis of said rotor and located between the planes of rotation defined by the sides of said blades for delivering abrasive to the inner ends of said blades, said blades terminating sufficiently close to said

feeding device to pick up the abrasive with a minimum impact and said blades having substantially smooth and uninterrupted abrasive-propelling surfaces of sufficient length to accelerate the abrasive smoothly and continuously and without abrupt change from the point of pickup thereof by each blade to its outer edge and discharge it therefrom at an abrading velocity when said rotor is rotated at optimum speed, a rotatable impeller comprising a plurality of impeller vanes disposed within said feeding device, said vanes extending to a region closely adjacent the axis to define a comparatively small axially extending passage and means for introducing abrasive into said passage and over the inner edges of said vanes, said vanes being operable to impel abrasive through said discharge opening."

subject matter of Peik's application S.N. 685,025. They point out that claims 7, 8 and 9 were claims 24, 26 and 27 of the application upon which the patent issued and were cancelled out of Rosenberger and Keefer's application S.N. 726,188; that the Board of Appeals of the Patent Office in its decision of February 17, 1944, reversing that of the Primary Examiner and allowing these claims ex parte, though following an inter partes proceeding in Interference No. 71,085, stated, "Claims 24, 26 and 27 are substantially the same as the counts of said Interference [71,085]. * * * Claims 24, 26, and 27 contain limitations which are not found in the Peik application [S.N. 685,025] * * *"; that in the inter partes decision in Interference No. 71,-085 the Board stated that it had made a close study of the structure set forth in the Peik drawing in the original specifications and that it could not find disclosed in it a wheel provided with "* * * blades having substantially smooth and uninterrupted abrasive propelling surfaces of sufficient length to accelerate the abrasive smoothly and continuously and without abrupt changes in substantial radial direction"; and that in Peik v. Rosenberger, supra, while the Court of Customs and Patent Appeals did not pass upon this question, it did say that "Although the board in its decision referred to the evidence in the case, we deem it unnecessary to do so because we think it is clear from the applications of the parties that appellant [Peik] is not entitled to make the claims constituting the counts in issue." See 113 F.2d at page 132. Pangborn points out that Interference No. 71,085 ((1) (a) supra) was between Peik's application S.N. 685,025 and Rosenberger and Keefer's application S.N. 726,-188, Peik being in fact the senior party. In view of all of the foregoing Pangborn contends that it was free to pursue Rosenberger and Keefer's application S.N. 382,-256 to a patent for there had been a formal adjudication by the tribunals of the Patent Office that claims 24, 26 and 27 of S.N. 726,188 were not within the scope of Peik's disclosures in S.N. 685,025.

American for its part contends that the decision of the Court of Customs and Patent Appeals did not adjudge the counts involved in the interference to constitute patentable claims and that the decision was not on the merits. The decision of the Court of Customs and Patent Appeals was, of course, not a determination that Rosenberger and Keefer were entitled to a patent embracing the claims in issue but the Court did decide that Peik was not entitled to make the counts claimed by him.

We do not have the benefit of a statement by the court below why it concluded that claims 7, 8 and 9 of Patent No. 2,352,-588 embrace and cover subject matter common to the Peik application S.N. 685,025. There is the distinct difference indicated by the Board of Appeals of the Patent Office between the blades shown in Peik's drawing accompanying his application S.N. 685,-025 and the blades of Rosenberger and Keefer's claims, cancelled from application S.N. 726,188 and included in the Rosenberger and Keefer Patent No. 2,352,588. It is only by giving the specification of application S.N. 685,025, its drawings and the claims, the status of a pioneer disclosure as did Judge Schoonmaker to Peik Patent No. 1,953,566, that the court below could have arrived at a conclusion of substantially identical subject matter. An examination of American's brief in the court below shows that American argued to that court as it argues to us that Judge Schoonmaker's decision in the Pittsburgh suit, affirmed by this court on appeal, settled forever all questions of priority between Peik on the one hand and Rosenberger and Keefer on the other in respect to the machine shown in the drawing which Peik took to Sprinkle; that because Judge Schoonmaker gave Peik's disclosures the status of a pioneer invention Pangborn zealously has avoided coming to grips with Peik and American on the issue of priority in the Patent Office. We think that American misinterprets Judge Schoonmaker's decision, putting too broad a scope on it. A similar criticism properly may be made of Pangborn's interpretation of the decision of the Board of Appeals of the Patent Office and of the Court of Customs and Patent Appeals in the inter partes proceeding at No. 71,085 between Peik and Rosenberger and Keefer. Our reasons follow.

Judge Schoonmaker held Peik Patent No. 1,953,566 to be valid and infringed. He did award to its disclosures the status of a pioneer invention. He did give Peik March 7, 1933, as the date of his conception of the invention embodied in Patent No. 1,953,566. He did base that date on the drawing which Peik took to Sprinkle, later embodied in the application S.N. 685,-025 filed in the Patent Office on August 14, 1933. But Judge Schoonmaker was not engaged in adjudicating a patent issued on application S.N. 685,025 but in determining whether Peik Patent No. 1,953,566 was valid and infringed. The issues adjudicated in the Pittsburgh suit by the District Court of the United States for the Western District of Pennsylvania and by this court related only to that patent. The court's finding, affirmed by this court, that Peik conceived his invention when he reduced his idea to the drawing subsequently taken to Sprinkle was employed only to give Peik's invention as disclosed in Patent No. 1,953,566 a date prior to that of Rosenberger and Keefer and the prior art as proved in the Pittsburgh suit. The District Court for the Western District of Pennsylvania did not and could not adjudicate the validity of a patent based on application S.N. 685,025 since such a patent had not been issued and was not before it. The scope of Judge Schoonmaker's decision necessarily was limited to an adjudication of the issues presented by the infringement by Pangborn and Forgings of Peik Patent No. 1,953,566 and the determination of the date of Peik's conception of invention was made an incident of that decision. American, however, seizes upon it as if it constituted a veritable adjudication of the validity of application S.N. 685,025: almost as if it had been a determination by the District Court of the United States for the Western District of Pennsylvania in an R.S. § 4915 proceeding that a patent should issue on that application. See 35 U.S.C.A. § 63. The legal effect which American attempts to put upon Judge Schoonmaker's use of Peik's drawing to prove Peik's case of conception of the invention disclosed in Patent No. 1,953,566 is such as we have indicated. But whether or not a patent shall issue on a pending application is a question which by statute[8] has been confided by Congress to the Commissioner of Patents, except as otherwise provided. See for example R.S. § 4915. Such a question cannot be determined in a District Court of the United States in an infringement proceeding.

What we have stated will perhaps be plainer if we point out its precise application to the facts of the case at bar. Claims 24, 26 and 27 were cancelled out of Rosenberger and Keefer application S.N. 726,188 by Pangborn and by it carried over into Rosenberger and Keefer application S.N. 382,256, a continuation in part of S.N. 726,-188. But, says American, this Pangborn could not accomplish lawfully for the District Court for the Western District of Pennsylvania had determined that Peik and not Rosenberger and Keefer was entitled to the machine shown in the drawing which Peik took to Sprinkle. Judge Schoonmaker, however, employed the drawing only for the purpose of showing that Peik was entitled to an earlier date than Rosenberger and Keefer in respect to the invention found by him to reside in Peik Patent No. 1,953,566; that was all the District Court could and all it did decide. What American seeks to achieve by its assertions in respect to Peik application S.N. 685,025 is to cause a determination by the court below of the validity and scope of a patent not yet issued. Such a course would deprive the Commissioner of Patents and the Patent Office of the very function with which Congress by statute endowed them.

We turn now to another facet of the instant case, viz., the assertion of Pangborn and Mr. Hall that because Pangborn prevailed over American in the Patent Office tribunals and in the Court of Customs and Patent Appeals in Interference No. 71,085 between Peik S.N. 685,025 and Rosenberger and Keefer application S.N. 726,-188, they necessarily are relieved of any contempt or punishment in the case at bar. The Patent Office tribunals and the Court of Customs and Patent Appeals did decide that Peik might not claim Rosenberger and Keefer's wheel possessing "blades having substantially smooth and uninterrupted

---

[8] See for example R.S. § 4888, 35 U.S.C.A. § 33.

abrasive propelling surfaces of sufficient length to accelerate the abrasive smoothly and continuously and without abrupt changes in substantial radial direction." American asserts that this was not a decision on the merits but this is beside the present point. What was decided was that as between Peik and Rosenberger and Keefer, Peik could not preempt Rosenberger and Keefer's form of wheel as claimed in the counts of the interference. This did put Rosenberger and Keefer in a position where they could claim the substance of these counts if they could prove themselves to be the first and original inventors of the wheel disclosed by them. The Patent Office did not reach and could not reach the question of priority of invention Peik vis-a-vis Rosenberger and Keefer for the ruling of the Court of Customs and Patent Appeals was squarely to the effect that Peik S.N. 685,025 could not reach the claims in interference. Pangborn, therefore, was entitled to pursue S.N. 726,188, or application S.N. 382,256, a continuation in part thereof, to a successful conclusion in the Patent Office. The patent issuing, however, American might test its validity over the prior art, including the machine shown in the drawing which Peik took to Sprinkle.

This does not necessarily mean, however, that Pangborn or Mr. Hall were at liberty to disregard the injunction issued by the court below on the motions of both parties. Other circumstances, however, are involved and must be considered.

We will deal first with Pangborn's complaint which has been found by the court below to state a cause of action. The gist of the complaint, prior to its amendment, consisted of the charge that American fraudulently caused the Commissioner to reinstate S.N. 685,025 and is pursuing the Hollingsworth applications, having deliberately corrupted them, to what may be a successful conclusion in the Patent Office. The court below found correctly that Pangborn had stated no cause of action in respect to any matter relating to the Hollingsworth patents and discussion of that result need not encumber this too lengthy opinion. But in respect to the revival of S.N. 685,025, Pangborn claims that American fraudulently induced the Commissioner to revive that application and asserts that the Commissioner and the Patent Office either cannot or will not pass upon the charge of fraud or, we add, will do so in a proceeding to which Pangborn cannot be a party. The fraud which is alleged is that Peik and American caused S.N. 685,025 to be reinstated after the six months' period prescribed by R.S. § 4915, 35 U.S.C.A. § 63, when in fact the application was intended to be abandoned. American in its answer asserts that its delay was unavoidable since it could not sooner obtain the cooperation of Peik. Pangborn's position in respect to the attitude of the Commissioner of Patents is based on the decision of the Court of Customs and Patent Appeals in Terry v. Webster, supra, 56 App.D.C. 198, 12 F.2d 139.

In the cited case the Court of Customs and Patent Appeals held that when an interference had been declared the Commissioner could not revoke his revival of an abandoned application while the interference proceeding was pending. In his decision on Pangborn's petition to revoke the revival of S.N. 685,025 filed in Interference No. 74,841 Assistant Commissioner Henry stated: "In the present case, an interference in fact exists between the claims constituting the counts of the interference. If the preliminary statements are correct, Peik is the original and first inventor, and if it should eventually be found upon evidence, that such is in fact the case, the disallowance of his opponents' applications could not be questioned. We can not close our eyes to these possibilities and rule Peik out of the interference, thereby running the risk of granting a patent to one who may not be the first inventor.

"In this view of the case, it is not necessary to inquire at this time into the question of whether Peik imposed upon the Office in securing the renewal of his application, or whether we have jurisdiction of the case to consider the question. If Peik's invention should be held abandoned through his deliberate neglect to timely file a petition to revive his abandoned application and he deliberately misled the Commissioner in issuing an order reviving his ap-

plication,—and we do not now find, nor do we see anything of record which would persuade us that he did so,—his action in this respect can not be considered as a matter ancillary to the issue of priority of invention. Daley v. Trube, 88 F.2d 308, 24 C.C.P.A., Patents, 964. Any unexcused delay on the part of Peik in petitioning to revive his application could only result in an abandonment of the invention disclosed in such application to the public and would not entitle petitioner or Peik's other opponent to an award of priority. Harbridge v. Perrin, 54 App.D.C. 106, 295 F. 927, 1924 C.D. 237.

"Inasmuch as the matter of the revival of an abandoned application is for the sole determination of the Commissioner of Patents (Martin v. Robertson, Commissioner of Patents, 59 App.D.C. 270, 39 F.2d 520, 1930 C.D. 27, 393 O.G. 519) and is not reviewable by the board of interference examiners or ordinarily by the Court, even though an appropriate motion had been timely filed, this matter must be left for ex parte consideration by the Commissioner after termination of the interference proceeding, whereupon it may be conclusively presumed that the rights of the public, as well as those of petitioner as a member of the public only, whatever such rights may be, will receive due protection.

"Moreover, this petition is based in part, at least, upon alleged facts discovered in testimony. It is the well-established practice of the office that an interference will not be dissolved on grounds arising out of testimony taken on a question of priority. (Paget v. Bugg, 1899 C.D. 214; 89 O.G. 1342; and Emmet v. Pullagar, 1907 C.D. 322; 130 O.G. 2719.)"

When we analyze Pangborn's position in respect to the decision of the Assistant Commissioner we find that its claims of injury are chimerical indeed. Let us assume first that the decisions of the Patent Office tribunals will be in favor of Rosenberger and Keefer in Interference No. 74,-841. Obviously, there could then be no hurt to Pangborn. Assume next that the decisions of the tribunals of the Patent Office in the interference will be in favor of Peik and Peik is found to be the original and first inventor and therefore may make the claims presently constituting the counts of the interference. At this point Rosenberger and Keefer would be dissolved out of the interference and their application S.N. 726,188 would fall as would Peterson's application S.N. 59,455. See (1) (b) supra. At that time, as is shown by that portion of the opinion of the Assistant Commissioner which we have quoted, the Commissioner must determine whether there was a fraudulent representation made to him by American and by Peik which caused him to revive S.N. 685,025. Under the decision which we have assumed the Patent Office would make Pangborn's interest would have disappeared for the Patent Office Tribunals would have found that Rosenberger and Keefer were not entitled to claim the invention. Pangborn and Rosenberger and Keefer, therefore, would have the interest of "a member of the public only" as the Assistant Commissioner has stated in his decision. What Pangborn in fact seeks is to obtain a special status in the Patent Office as a party to a proceeding and not merely as a member of the public. Pangborn is not entitled to such a status for if it were so entitled any member of the public could insist on being heard in such a proceeding and the orderly administration of the Patent Office necessarily would come to an end.[9]

On the other hand, if a patent issued to American on Peik's application S.N. 685,025 as originally filed, and if Pangborn was made a defendant in an infringement suit based on that patent and Pangborn asserted as a defense that the revival of S.N. 685,025 had been procured by fraud, Pangborn might be able to assert

---

[9] It should be pointed out that the decisions of the Commissioner of Patents in respect to the revival of an application have been held not to be judicially reviewable except where he has acted capriciously or arbitrarily in denying revival. Chessin v. Robertson, 61 App.D. C. 376, 63 F.2d 267; Cregier v. Coe, 62 App.D.C. 320, 67 F.2d 692, certiorari denied 291 U.S. 683, 54 S.Ct. 560, 78 L. Ed. 1070; Fekete v. Robertson, 57 App. D.C. 73, 17 F.2d 335. Cf. Martin v. Robertson, 59 App.D.C. 270, 39 F.2d 520.

that fraud as a successful defense to the suit under the principles enunciated by the Supreme Court in Hazel-Atlas Co. v. Hartford Co., 322 U.S. 238. Such a question is not presently before us and we need not pass on it. If a patent issued on S.N. 685,025 as originally filed Pangborn might test the validity of the patent by suit under the Declaratory Judgments Act, Judicial Code, § 274d, 28 U.S.C.A. § 400. But Pangborn may not be heard to assert, as in effect it does assert, that the Patent Office will not fulfill the function confided to it by Congress in respect to S.N. 685,025. It follows that Pangborn has not stated a cause of action in its complaint.[10], [11]

What Pangborn and American both have attempted presently to effect, as a part of their lengthy and acrimonious dispute respecting patent rights, in Civil Action No. 193 is to get out of the Patent Office and into the courts, to have the District Court of Delaware determine questions relating to the issuance of patents confided by statute to the Commissioner of Patents and to the Patent Office. Pangborn has attempted this by its complaint and American thereafter took a similar line in its answer and counterclaim. No cause of action is stated in the complaint and none in the counterclaim. The court below should have dismissed the complaint upon the motion made by American.[12]

In making this statement we are aware that the question of whether or not the court below erred in denying American's

---

[10] In its amendment to its original complaint, allowed to be filed by the court below by a paragraph of the injunction order of August 3, 1943, Pangborn, making reference to the result of the Pittsburgh suit and asserting that Hollingsworth was the true and first inventor of the machine disclosed by Peik Patent No. 1,953,566 and that this was withheld from the District Court for the Western District of Pennsylvania, asserting also that American unlawfully obtained the revival of Peik application S.N. 685,025 and that American has attempted to obtain by deceit and misrepresentation practiced on the Patent Office a patent on Hollingsworth S.N. 570,-782, attempts to set up as a cause of action based on the anti-trust laws of the United States and claims treble damages.

Pangborn's assertions in respect to Hollingsworth and the Hollingsworth machine were brought before the District Court for the Western District of Pennsylvania in the Pittsburgh suit and were disposed of unfavorably to Pangborn. See Pittsburgh Forgings Co. v. American Foundry Equipment Co., D.C., 41 F.Supp. 841. The assertion that American obtained the revival of S.N. 685,025 has already been discussed in this opinion. The assertion that American, disguised as Hollingsworth, was attempting to capitalize on Hollingsworth S.N. 570,782, properly was disposed of by the court below in its first opinion. See 69 F.Supp. 429. Note 3 supra. So viewed all that remains of Section "XXI" of the amended complaint are the bare allegations that Pangborn asserts a cause of action under the anti-trust laws of the United States. These allegations seem

mere "color" against the background of the complaint as a whole.

[11] We note that Patent No. 2,212,451 is alleged by American in paragraph 22 of its counterclaim to have issued on August 20, 1940 (some five months before the suit at No. 193 was filed in the court below) upon a division of S.N. 685,025 and that American alleges that this patent is a bar to Pangborn's suit in the court below by virtue of Judge Schoonmaker's decision in the Pittsburgh case and contends that the patent and Judge Schoonmaker's decision is a bar to any valid patent to Pangborn. We note also that Pangborn in paragraph 2 of its answer to American's counterclaim denies these allegations. But in our view these allegations of the counterclaim and the answer thereto are immaterial for reasons hereinbefore stated in respect to American's attempted use of the Pittsburgh decision and S.N. 685,025 and reiterated in the next following paragraph of this opinion.

[12] Cf. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 129 F.2d 848, 849, cited in the first opinion of the court below. In this case, stated by Woodbury, J., to be one of original impression, the Court of Appeals for the First Circuit affirmed a decision of the District Court enjoining Dwinell-Wright Co. "from prosecuting or taking any further step" in a proceeding brought by it in the Patent Office for the cancellation of certificates of trade-mark registration previously issued to National Fruit Product Company.

It will be observed, however, that registration of a trade-mark under the Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq., neither enlarges nor abridges

motion to dismiss the complaint is not before us and cannot come before us except upon appeal after final hearing of Civil Action 193. But we are presently concerned with the validity of the orders filed on May 31, and July 5, 1945, the first depriving Pangborn of any claim or cause of action against American based on Patent No. 2,352,588, the second finding Mr. Hall guilty of contempt. An essential part of the background against which the validity of these orders must be weighed is the legal fact that neither Pangborn's complaint nor American's counterclaim state a cause of action. The suit should have been dismissed and no injunction should have issued in the first place. In the second place it was an abuse of the court's legal discretion to issue it for as we have demonstrated, Pangborn was at liberty to pursue the Rosenberger and Keefer application S. N. 382,256 in the Patent Office for nothing in that application or in S.N. 726,188 was embraced within the disclosures of Peik's S.N. 685,025. The tribunals of the Patent Office and the Court of Customs and Patent Appeals had so held. The court below enjoined Pangborn from prosecuting the interferences enumerated or any others in which Peik S.N. 685,025 might be or might become involved. The claims cancelled out of Rosenberger and Keefer's S.N. 726,188 and transferred to S.N. 382,256, which matured in Pangborn Patent No. 2,352,588, cannot, as we have stated, fall within the scope of Peik's disclosures in S.N. 685,025. The decision of the Court of Customs and Patent Appeals in Peik v. Rosenberger was conclusive on this issue.

In view of our decision it is unnecessary to discuss the nature of the punishment sought to be imposed by the court below on Pangborn or the application of the doctrine of unclean hands in the light of the decisions of the Supreme Court in Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 and Id., 324 U. S. 570, 65 S.Ct. 815, 89 L.Ed. 1198.

The orders appealed from will be reversed.

the registrant's substantive common law rights in the mark but that registration affects the registrant's remedies for the enforcement of the rights given him by common law, enlarging them, giving him, for example, the right to treble damages. The registration of a trade-mark does not establish conclusively the registrant's ownership of the mark or its validity and the validity of the mark may be questioned in any action in which the mark is relied on. The suit in the cited case was in fact based on unfair competition with the marked article.

It should be pointed out that Judge Woodbury stated, 129 F.2d at page 852, .

"But the fact remains that the question of the validity of the plaintiff's registrations was before the court below. That issue was raised by the pleadings, and the court below, if the plaintiff should prevail, would have had to pass upon it in order to pass upon the plaintiff's prayer for a three-fold increase in its damages."

The decision is not apposite under the circumstances alleged in Civil Action No. 193. Compare also United Baking Co., Inc., v. Bakery and Confectionery Workers Union, Local 221, 257 App.Div. 501, 14 N.Y.S.2d 74, also cited by the court below in its first opinion.